Patricia Barry, Esq. (SBN 59116)
634 S. Spring St., Suite 823
Los Angeles, CA 90014
(213) 995-0734

Arch Cunningham (SBN 210625)
1489 McAllister St.
San Francisco, CA 94115
archcunnghm@yahoo.com
(415) 563-1828

Attorneys for Plaintiff
JOHN DOE, et al.
On behalf of themselves and other similarly situated.

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ARCHIBALD CUNNINGHAM, HUMBERTO RUIZ, both individually and on behalf of a class of others similarly situated.<br><br>           Plaintiffs,<br>      v.<br><br>KEVIN SINGER, Court-appointed receiver, sued individually and official capacity; RECEIVERSHIP SPECIALISTS, a California licensed business, JOHN RACHLIN, principal, sued in his individual capacity; RICK MARQUIS, principal, sued in his individual capacity; KAMALA D. HARRIS, Attorney General of California, sued individually and in her official capacy; CITY AND COUNTY OF SAN FRANCISCO; San Francisco County Sheriff ROSS MIRKARIMI, sued individually and in his official capacity; San Francisco District Attorney, GEORGE GASCON, sued individually and in his official capacity; COUNTY OF LOS ANGELGES, a municipality: District Attorney JACKIE LACEY, sued individually and in her official capacity; COUNTY OF KERN, District Attorney LISA GREEN, sued individually and in her official capacity; COUNTY OF MARIN, District Attorney EDWARD S. BERBERIAN, sued individually and in his official capacity; COUNTY OF | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF UNDER 42 U.S.C. §1983; ATTORNEY FEES UNDER 42 U.S.C. §1988**<br><br>**(1) Violations of Civil Rights (42 U. S. C 1983);**<br>**(2) *Monell*-Related Claims;**<br>**(3) Declaratory and Prospective Injunctive Relief.**<br><br>**DEMAND FOR JURY TRIAL**<br><br>. |

| | |
|---|---|
| 1 | SACRAMENTO, District Attorney JAN SCULLY, sued individually and in her official |
| 2 | capacity; COUNTY OF ALAMEDA, District Attorney NANCY O'MALLEY, sued |
| 3 | individually and in her official capacity; COUNTY OF CONTRA COSTA, District |
| 4 | Attorney SCOTT PETERSON, sued individually and in his official capacity; |
| 5 | JUDGE BARBARA A. MEIERS, Los Angeles Superior Court Judge, sued individually and in |
| 6 | her official capacity; JUDGE ROBERT H. O'BRIEN, Los Angeles |
| 7 | Superior Court Judge, sued individually and in his official capacity; JUDGE THOMAS L. |
| 8 | BROWN, Sacramento Superior Court Judge, sued individually and in his official capacity; |
| 9 | JUDGE LAWRENCE J. APPEL, Alameda Superior Court Judge, sued individually and in |
| 10 | his official capacity: JUDGE LAUREL S. BRADY, Contra Costa Superior Court Judge, |
| 11 | sued individually and in her official capacity; JUDGE RANDOLPH HEUBACH, Marin |
| 12 | Superior Court Judge, sued individually and in his official capacity; JUDGE MARLA |
| 13 | MILLER, San Francisco Court Judge, sued individually and in her official capacity; |
| 14 | JUDGE JAMES STOELKER, Santa Clara Court Judge, sued individually and in his |
| 15 | official capacity; JUDGE LORNA H. BRUMFIELD,, Kern Court Judge, sued |
| 16 | individually and in her official capacity; JUDGE DELBERT C. GEE, Alameda |
| 17 | Superior Court Judge, sued individually and in his official capacity; JUDGE DAVID B. |
| 18 | FINN, Contra Costa Superior Court Judge, sued individually and in his official capacity; |
| 19 | JUDGE LYNN O'MALLEY TAYLOR, San Francisco Court Judge, sued individually and |
| 20 | in her official capacity; JUDGE LYNN JUDITH CRADDICK, Contra Costa Court |
| 21 | Judge, sued individually and in her official capacity; JUDGE DONALD EVANS |
| 22 | QUIDACHAY, San Francisco Superior Court Judge, sued individually and in his official |
| 23 | capacity; JUDGE A. JAMES ROBERTSON II., San Francisco Superior Court, sued |
| 24 | individually and in his official capacity; ,JUDGE LILLIAN SING, San Francisco |
| 25 | Superior Court Judge, sued individually and in her official capacity; PRESIDING JUDGE |
| 26 | CYNTHIA MING-mei LEE, Presiding Judge of the San Francisco Superior Court, sued |
| 27 | individually and in her official capacity; CHIEF JUSTICE TANI G. CANTIL- |
| 28 | SAKAUYE, Chief Justice of State Supreme Court, Chair of California Judicial Council, |

sued individually and in her official capacity;
PRESIDING JUSTICE ANTHONY KLINE,
California Court of Appeals, First Appellate
Division, sued individually and in his official
capacity; JUDGE JAMES RICHMOND,
Justice of California Court of Appeals, First
Appellate District, sued individually and in her
official capacity; JOHN SCOTT McKAY, an
officer of the court and attorney in the
underlying case, sued in his individual
capacity; MICHAEL COOMBS, property-
owner and partner in condominium
association, sued in individual capacity,
TAMARA WOODS, property-owner and
partner in condominium association, sued in
individual capacity.

                    Defendants, and DOES 1 through
10.

**TABLE OF CONTENTS**

**INTRODUCTION**…………………………………………………… 1

**II. JURISDICTION**………………………………………………… 4

**III. VENUE**………………………………………………………… 4

**IV. INTRADISTRICT ASSIGNMENT** ………………………………… 4

**V. CLASS ALLEGATIONS**…………………………………………… 4

**VI. PARTIES**………………………………………………………… 7

**VI. FACTUAL ALLEGATIONS**…………………………………… 19

    A. **Statutory Framework for Unauthorized Practice of Law**……….. 19

    **B. Statutory and Regulatory Framework Related to Appointment of Receivers** …………………………………….. 21

    **C. The Various Appointments of Mr. Singer In This Class Action** ……………………………………………………….. 23

    **D. The Unauthorized Practice of Law Conspiracy In the Context of Receiverships** …………………………………………….. 26

    **FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. Section 1983) By Plaintiffs/Class Against All Defendants**

    **(Violation of Class Members' Civil Rights Under Color of State Law by Engaging in Conspiracy)** ………… 32

    **SECOND CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. Section 1983) By Plaintiffs/Class Against All Defendants .**

    **(Bus. & Prof. Code §6125 As Applied Violates Class Members' Procedural Due Process Rights)** …… 34

    **THIRD CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. Section 1983) By Plaintiffs/Class Against Singer, All Judicial and Non-judicial Defendants)**

**(Violation of Separation of Powers Clause)** ….. 36

**FOURTH CAUSE OF ACTION FOR VIOLATION
OF CIVIL RIGHTS (42 U.S.C. Section 1983)
By Plaintiffs/Class Against All Defendants
.
(Constitutional Challenge to Code of Civil Procedure §564 et. al.,
On its Face and As Applied Violated Class Members'
Substantive and Procedural Due Process Rights)** …38


**FIFTH CAUSE OF ACTION FOR VIOLATION
OF CIVIL RIGHTS (42 U.S.C. Section 1983)
By Plaintiff Against City and County of
San Francisco (Sheriff's Department),
All District Attorneys, AG Kamala Harris**

**Violation of Civil Rights under Color of Law
Municipal and Individual Liability for Unconstitutional
Policies and Practices** ……………. 42


**SIXTH CAUSE OF ACTION FOR DECLARATORY
AND INJUNCTIVE RELIEF** ………….. 45

**INTRODUCTION**

1. This case involves the criminal matter of one court-appointed receiver, Mr. Kevin Singer, who has been engaging in a criminal and fraudulent scheme throughout the state that involves his unauthorized practice of law (UPL). Under the State Bar Act, no one can practice law in California unless they are an active member of the bar. (Cal. Bus. & Prof. Code §§6125-6126). While the judicial defendants, Attorney General Kamala Harris, and State Bar President Craig Holden are certainly aware of the problems of the unauthorized practice of law in the context of immigration law as spelled out by Assembly Bill 1159,[1] they seem impervious to the same criminal conduct in the context of court-appointed receiverships. But even when members of the State Bar are aware of the problem of the unauthorized practice of law in the context of immigration, it seems they lack the resources or the resolve to uphold the laws prohibiting the unlawful practice of law.[2]

2. In the context of receiverships, not only is there no attempt by the judicial defendants, the Attorney General Kamala Harris, or State Bar President Holden to prosecute the unlawful practice of law, there seems to be a deliberate obliviousness to the fact that at least one receiver, Mr. Singer, is given carte blanche to practice law and file any type of pleading or case. For instance, in the Superior Court of Alameda County, Mr. Singer filed a motion for a "Contempt of Court Hearing Against John Tyler and Gregory J. Tyler; If Found Guilty, Fine $1,000 and Hold Under Arrest for Five Days or Until They Turn Over $3,245 of Receivership Rents and Books/Records." (**RJN**, *Exhibit B*, RG 10-499443). Mr. Singer, a non-lawyer, is filing contempt motions and threatening to have parties thrown in jail for not cooperating with what amounts to his criminal scheme to practice law without a license. He routinely prepares legal documents such as releases and stipulations for parties even though this is considered the practice of law. He not only prepares stipulations,[3] but submits them to various courts such as the Superior Court of

---

[1] http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201320140AB1159
AB 1159, signed by Governor Brown on October 5, 2014 expanded the State Bar Act related to the unauthorized practice of law to apply to "anyone who is not an attorney" from advertising as a "notario," not just notaries public. The ban is intended to prevent confusion that has often times been capitalized upon by non-attorneys hoping to present themselves as attorneys, as a "notario" in many Latin American nations is a type of lawyer.

[2] Mark J. Geragos just filed a lawsuit against the State Bar Association and its President, Craig Holden, for failure to enforce AB1159 and the unauthorized practice in the area of immigration law. (**RJN**, *Exhibit A*).

[3] In *In re Garcia* (9th Cir. BAP 2005) 335 B.R. 717, 728, the court found that the preparation of a stipulation and release between a debtor and trustee was the practice of law: "*It is well settled*

Marin and the Superior Court of San Francisco. (**RJN**, *Exhibit I, Exhibit H*).

      3. In another case in San Francisco Superior Court, Mr. Singer was allowed by judicial defendants to practice law and "evict" the owner of real property. (**RJN**, *Exhibit C*, CGC-10-510760). When it became apparent to Mr. Singer that his Judicial Council approved EJ-130 "writ of possession" form was defective and that he was about to evict not just the targeted "owner" but all of the owner's tenants, he was allowed by the court to "recall" his writ and submit a new one.[4] When counsel for the "tenant" asked judicial defendant Lynn O'Malley Taylor at the hearing on the tenant's claim of right to possession if she was allowing Mr. Singer to practice law without a license, she abruptly terminated the hearing. She became indignant that counsel would even ask if a court-appointed non-lawyer receiver was engaging in the unauthorized practice of law. She shut out any discussion of whether she was aiding and abetting the unlawful practice of law even though the California Commission on Judicial Performance has found that a judicial officer "unlawfully aided and abetted" the unlawful practice of law. (**RJN**, *Exhibit D*).

      4. In an odd twist in the Superior Court of Contra Costa, Mr. Singer had a "disagreement" with opposing counsel over the interpretation of a court order and then filed a "*Motion for Order Authorizing Receiver to Retain Legal Counsel; Memorandum of Points and Authorities and Declaration of Kevin Singer in Support Thereof.*" (**RJN**, *Exhibit E*, C12-00284). While Mr. Singer thought he had the right to evict the owner of real estate or bring a contempt action against a property owner even though he is not a licensed attorney, he sought to retain counsel in this case, stating in his declaration, (**RJN**, *Exhibit E*, pg. 3, ¶5):

    *Although the Receiver has the ability to write basic pleadings and file papers with the*

---

*in California that "practicing law" means more than just appearing in court. Estate of Condon, 65 Cal.App.4th 1138, 76 Cal.Rptr.2d 922 (1998). Under California law, the practice of law includes the preparation of legal instruments and contracts by which legal rights are secured, whether the matter is pending in court or not. Frankfort Digital Services. Ltd. v. Neary (In re Reynoso), 315 B.R. 544, 552 (9th Cir.BAP2004)."*

[4] http://webaccess.sftc.org/Scripts/Magic94/mgrqispi94.dll?APPNAME=WEB&PRGNAME=ValidateCaseNumber&ARGUMENTS=-ACPF10510760

| | |
|---|---|
| SEP-30-2014 | UNLAWFUL DETAINER MOTION 501, DEFENDANT HUMBERTO RUIZ, JR.S HEARING ON CLAIM OF RIGHT TO POSSESSION IS DENIED. WRIT, ON WHICH THIS MOTION IS BASED, HAS BEEN RECALLED AND A NEW WRIT HAS BEEN ISSUED. CLAIMANT'S ALLEGED TENANCY IS NOT AT ISSUE IN THIS CASE. ORDER OF AUGUST 20, 2014 SPECIFICALLY EXCLUDES ANY CURRENT TENANT WHO IS RESIDING ON THE PROPERTY. ANY ISSUES RELATING TO CLAIMANT'S TENANCY ARE OUTSIDE THE SCOPE OF THIS ACTION. |

---

> *Court, he is not an attorney. The Receiver is also not an expert in legal environmental disclosures that will need to be provided to tenants. The Receiver also seeks help from time to time in interpreting the Court's Order and working with the Parties' legal counsels.*

Mr. Singer then goes on to quote Cal. Rule of Court 3.1180 and acknowledges that "*a receiver must not employ an attorney without the approval of the court.*" Ironically, he's engaged in the unauthorized practice of law by filing a memorandum of points and authorities and appearing in court on his motion to "retain counsel." No Judicial Council forms have been promulgated for him to come into court to request an attorney and avoid the actual or appearance of practicing law without a license. Making matters worse, the existing forms contradict CRC 3.1180 by suggesting that the need for an attorney is "permissive." (*See, RC-310, ¶18; "The receiver may employ unlawful detainer attorneys and eviction services without a court order.*").

5. Not only are the judicial officers complicit in denying the fact of the receiver's unauthorized practice of law, but they seem confused about the nature and scope of the receiver's authority. While the case law states that the appointment of a receiver is a "drastic remedy" that should only be applied only in "exceptional circumstances,"[5] the judicial defendants here have rubber-stamped every request for an appointment. They simply ignore any opposition to the appointment. (**RJN**, *Exhibit F, Exhibit G*). They then grant the receiver the right to possession and control of the disputed property and the authority to manage, sell, or control it as he sees fit. The receiver is given almost unfettered authority without any actual oversight or accountability.

6. Given the almost unfettered rights of the receiver once appointed under Code of Civil Procedure 564 coupled with his unauthorized practice of law, Mr. Singer has engaged in nothing short of a reign of terror throughout the state. He evicts owners from their property, threatens to throw those he considers uncooperative in jail, and rings up unconscionable fees while practicing law without a license. One hapless owner of a car wash Mr. Singer was appointed to sell would complain that Mr. Singer "accomplished nothing" while churning up $247,771.94 in fees. (**RJN**, *Exhibit G*, pg. 2/28, pg. 3/18-19).

7. Mr. Singer's unauthorized practice of law dovetails with the financial incentives banks, lenders, and other petitioning parties. By appointing a receiver, the party petitioning for an appointment regains control over a distressed business or real property and avoids incurring the costs associated with a protracted judicial foreclosure. On the other hand, the property or

---

[5] ***City and County of San Francisco v. Daley*** (1993) 16 Cal.App. 4th 734, 744.

business owner loses possession of his property, any rental income, and is smothered in fees the receiver churns up to extract a "stipulated agreement" to sell. This unholy alliance involving Mr. Singer's (and perhaps many other receivers) UPL and the financial incentive of lenders/banks must be held accountable.

## II. JURISDICTION

8. This action for declaratory and injunctive relief and damages arises under the 5th Amendment to the U.S. Constitution, the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, the Privileges and Immunities Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. section 1983; and the Supremacy Clause, U.S. Const., Art. VI, cl. 2.

9. The court has jurisdiction over the claims alleged in this complaint pursuant to 28 U.S.C section 1331 and 1343 for a violation of 42 U.S.C. §1983. Plaintiff's claim for injunctive and declaratory relief are authorized under 28 U.S.C. §2202. Defendants were acting under color of state law in all matters and rulings related to this case.

10. Supplemental Jurisdiction over the pendant state law claims is proper pursuant to 28 U.S.C. §1367.

## III. VENUE

11. Venue is proper in the Southern District of California pursuant to 28 U.S.C. §1391(b) because Defendant Singer performs his administrative and official duties there and thus resides there for purposes of venue. While Mr. Singer has engaged in his unlawful practice of law (UPL) throughout the state, many of the events or actions giving rise to these claims were directed from Mr. Singer's principal place of business which is located in Los Angeles.

## IV. INTRADISTRICT ASSIGNMENT

12. Pursuant to Civil L.R. 3-2(c), this action should be assigned to Los Angeles because all the events, rulings, hearings, orders giving rise to this complaint have been directed from Mr. Singer's office in Los Angeles. The counsel for the class members also has her office in Los Angeles. The judicial defendants rendering the various rulings and orders perform their judicial functions throughout the state. Los Angeles is as more convenient forum than Bakersfield or other possible locations.

## V. CLASS ALLEGATIONS

13. Plaintiffs bring this action pursuant to 23(a)(1-4) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated individuals who have suffered financial and emotional harm as a direct result of Mr. Singer's UPL scheme.

14. The class, to be represented by Archibald Cunningham and Humberto Ruiz, is defined as follows:

> All owners of real estate or businesses, tenants, and other parties who have been the subject of orders, stipulations, or other motions and actions in state superior courts that were brought against them by non-lawyer and court-appointed receiver Mr. Kevin Singer while Mr. Singer was practicing law without a license.

15. This action has been brought and may properly be maintained as a class action under Federal law and satisfies the numerosity, commonality, typicality and adequacy rquirements for maintaining a class action under Fed. R. Civ. P. 23(a).

16. The member of the class are so numerous as to render joinder impracticable. There are hundreds of cases Mr. Singer has been appointed to spread throughout the state where he has been engaged in the UPL. In any given superior court, it's possible that some judicial officers have followed the rules of court and Mr. Singer has appeared in those particular cases only while represented or under the supervision of one of the law firms. However, in the same court, another judicial officer will have allowed Mr. Singer to practice law without a license. Upon information and belief, the size of the proposed class is approximately 200. Further, Mr. Singer is only one of many "receivers" practicing throughout the state and it's not unreasonable to assume that other receivers are also being allowed, deliberately or inadvertently, to practice law without a license. In which case, it may be that many other prospective class members will emerge.

17. Upon information and belief, joinder of all of these individuals is impracticable because of the large number of class members and the fact that the class members are dispersed over the entire state of California, with most scattered in different judicial districts. Furthermore, upon information and belief, many of the class members are distressed business and real property owners, who are in court in their own case "in propria persona" because they cannot afford to hire an attorney who might point out Mr. Singer's UPL. In that regard, these class members have been financially compromised by the appointment of a receiver and would have great difficulty in pursuing their rights individually. Moreover, those class members who are represented and who have been contact by counsel, have expressed an unwillingness to join the class because they are concerned above the professional repercussion of "suing" judges, however justified the basis for the lawsuit might be. Finally, it's likely that many of the attorneys for prospective class members are afraid of their own roles and potential liability in Mr. Singer's UPL. For example, Mr. Singer routinely prepares a stipulation where all parties, attorneys, and judges sign off. In one case in the Superior Court of Alameda, Mr. Singer prepared a stipulations where the attorney

for plaintiff, Alan Scott Koenig, and the attorney for defendant, Stephen M. Flynn, both have signed off on Mr. Singer's document. (**RJN**, *Exhibit SS*). In signing off on Mr. Singer's legal document, they are arguable "aiding and abettting" in the UPL. Naturally, counsel for the class members are encountering resistance from the attorneys for prospective class member who may have unwittingly and with no bad intentions implicated themselves in the UPL.

18. Common questions of law and fact exist as to all members of the Class, in that they have had their civil rights violated by Mr. Singer's UPL. All of the class members have been dragged into court by the non-lawyer Mr. Singer while he was acting "in propria persona." They have all had their civil rights violated by the judicial defendants and non-judicial defendants who have allowed Mr. Singer's UPL. They have all been billed "receiver fees" that are actually legal fees incurred by a non-lawyer who was practicing law without a license. The order or judgments obtained by a non-lawyer engaged in the UPL of law are a "nullity" and the billed fees are not recoverable because they are "unathorized legal services" as explained in the holding of the Supreme Court in *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Ca. 4th 119, 135.[6]

19. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all class members sustained damages arising out of Defendant Siinger's course of conduct related to his UPL scheme. The harms suffered by Plaintiffs are typical of the harms suffered by the class members.

20. The representative Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are adverse to the interests of the members of the Class.

21. Plaintiffs' counsel have the knowledge and experience to successfully prosecute this action against the Defendants. While counsel for the Plaintiffs is aware of no conflict of interest between counsel and members of the class, Plaintiff has noted that there is concern among the counsel for class members (in their own ongoing cases) involving their possible implication in the UPL.

22. Common question of law and fact related to the UPL exist as to all members of the Class and predominate over questions and law related to the receivership issues that affect the individual members of the Class. Theses common questions of law and fact include, without

---

[6] **Birbrower**, *supra*, 135: "We agree with the Court of Appeal to the extent it barred **Birbrower** from recovering fees generated under the fee agreement for the unauthorized legal services it

limitation or exception, the impact of Mr. Singer's UPL on the various receivership estates. A favorable ruling on the issue of the UPL will render any orders or judgment or rulings related to the underlying receiver issues moot.

23. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because there are inherent obstacles and biases that judges have in judging other judges or themselves. In this action, judicial defendant Quidachay gave short shrift to Plaintiff's assertion on May 6, 2014 that Mr. Singer was engaged in the UPL. He simply dismissed the UPL issue as "untimely." Also, on October 20, 2014, when counsel for Plaintiff Ruiz asked judicial defendant Lynn O'Malley Taylor if she was allowing Mr. Singer to practice law without a license, the judicial defendant promptly and abruptly terminated the hearing. The judicial defendants don't want this issue raised because it implicates them in the unlawful conduct of UPL. The Commission on Judicial Performance has found judges guilty of "aiding and abetting" in the misdemeanor of UPL. For instance, on February 28, 1995, Victoria B. Henley found that Judge Thomas M. Kelly of the Alpine Judicial District of California, aided and abetted in the misdemeanor of the "unauthorized practice of law," (RJN*, Exhibit D*):

> The trial court determined that Judge Kelly, by agreeing that the Nevada attorney would handle the management of the lawsuits in the absence of a court order permitting the Nevada attorney to appear as counsel, after signing the complaints prepared by the attorney, **_unlawfully_ aided and abetted the unauthorized practice of law**. (emphasis added).

A class action is needed here because, as experienced by Plaintiff, the judicial officers find one pretext or another to dispatch the issue and allow the receiver to continue his UPL. By suing the judicial officers en masse, counsel can avoid some summary dismissals on the pretext that their cases are "de facto appeals" under the **Rooker-Feldman** doctrine rather than general constitutional challenges. Further, the cost and expense of each individual member of the class litigating would be enormous and deter them from litigating even if they were afraid or rightly apprehensive of suing judges.

## VI. PARTIES

**Plaintiffs**

24. Archibald Cunningham (hereinafter Cunningham) is the owner of the condominium located at 1489 McAllister St., San Francisco, which is the subject of this lawsuit and was the subject of Mr. Coombs' suit of September 29, 2010 to compel arbitration under the 2007 TIC performed in California."

Agreement. (CPF-10-510760). Mr. Cunningham sued Mr. Coombs, Ms. Woods, and their attorney, for fraud for suing on the defunct 2007 TICA rather than the governing document, which was, under the California Subdivision Map Act, the 2009 CC&Rs and Bylaws. (CGC-11-511994). After his civil complaint in state court was dismissed when he failed to post $50,000 in security under the state Vexatious Litigant Statute (VLS), Cunningham filed a federal civil rights suit, arguing that the VLS was never intended to be applied against "represented" litigants.

25. Humberto Ruiz is a tenant of Mr. Cunningham and was subject to eviction by Mr. Singer's first and second writ of possession. He avoid being evicted by filing a Claim of Right to Possession under Code of Civil Procedure 1174.3, which halts an eviction. Although Mr. Singer would "recall" his second writ of possession on Judicial Council form EJ-130 and check the box that he had not served "all the tenants" with a "Pre-judgment Clam of Possession," Mr. Ruiz was still subject to eviction under the procedures promulgated under statutes and the judicial council forms.

**Defendants**

26. **<u>Kevin Singer</u>**[7]. Mr. Singer is employed as a court-appointed receiver. He's also the "President" of a firm doing business in California as "Receiver Specialist." Mr. Singer has been employed in almost 200 cases in numerous counties throughout California. Alhough California Rule of Court 3.1179(a)(1-2) provides that he should remain "neutral" and "act for the benefit" of all who have an interest in the receivership property, he normally does the bidding of the party seeking his appointment because he only gets paid and recovers his fees and expense once the "receivership estate" is sold or liquidated. In all the cases cited in the Request for Judicial Notice, Mr. Singer has practice law without a license. He's also acted in excess of his statutory authority as receiver and tried to initiate "contempt" actions against recalcitrant parties who do not follow his biddings. In some of his pleadings, he's asked to be allowed to use the Sheriff as his private security company. (*See, **RJN**, *Exhibit RHO*). In another case, he slipped in a general release

---

[7] ***Brentwood Academy v. Tennessee Secondary School Athletic Assoc***. (2001) 531 U.S. 288, 298. "We have treated a nominally private entity as a state actor when it is controlled by an agency of the State, when it has been delegated a public function by the State, when it is entwined with government policies, or when government is entwined in its management or control.": ***Blum v. Yaretsky***, 457 U.S. 991, 997 (1982)(holding that the issue of whether a private party is an actor functioning under color of law or as a state actor is a question of law for the court

---

form exonerating him from any liability. (*See, **RJN**, *Exhibit FF*). Besides improperly expanding his statutory rights, he has engaged in a scheme to practice law without a license. In the guise of being "in-house counsel," his partner John Rachlin provides him "legal services." Likewise, the parties who have sought his appointment often have their attorney provide him "legal services" or appear in court to provide him support during "oral argument." For instance, attorney John Scott McKay has written numerous pleadings on Mr. Singer's behalf and acted as his attorney at court. The fact that Cal. Rule of Court 3.1179 prohibits the party who sought appointment from entering into any "agreements, contracts, or understanding" with the receiver, both Mr. Singer and those very parties collude to bring about the "sale" of the receivership estate so that they may collect their various fees.

27. **John Rachlin**. John Rachlin is an attorney licensed to practice law in California and is also a principal in Receivershp Specialists. His duties with Receivership Specialists is described as "in-house" counsel. He is sued in his individual capacity for aiding and abetting Mr. Singer's UPL. He's provide his legal services to Mr. Singer and provided him various "declarations" for the cases in which Mr. Singer has been appointed a receiver. (**RJN**, *Exhibit JR*, *Exhibit JR-1, Exhibit JR-2*). Their firm Receivership Specialists is simply a mechanism where Mr. Rachlin aids and abets Mr. Singer's UPL in violation of CRPC 1-300(A) *"[A] member shall not aid any person or entity in the unauthorized practice of law."* Upon information and belief, it may be shown that they are illegally fee-splitting in violation of the CRPC.

28. **RECEIVERSHIP SPECIALISTS. (*John Rachlin, Rick Marguis*).** Receiver Specialists is a licensed business doing business in California. Mr. Singer is the principal and founder of the company. The company is sued for damages for the criminal activity of its principal. Rick Marquis is the firm's licensed real estate broker who Mr. Singer uses for the "sales" of real property and then apparently splits or shares the commissions. Most recently, Mr. Marquis aided and abetted Mr. Singer's UPL by participating in the wrongful eviction of an owner from his house.

29. **Attorney General Kamala Harris**. She is the chief law enforcement officer of the state of California and is charged with seeing "that the laws of the State are uniformly and

adequately enforced." (Cal. Const. Art. V, sec. 13). She has direct and complete supervisory control over every district attorney and sheriff and such other law enforcement officers as directed by law. In that regard, a district attorney's enforcement action for violation against the UPL provides a basis for relief to the offended party. (Bus. & Prof. Code 61255). Further, the state constitution provides (Cal. Art. V, sec 13);

> Whenever in the opinion of the Attorney General any law of the State is ***not being adequately enforced in any county***, it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney. When required by the public interest or directed by the Governor, the Attorney General shall assist any district attorney in the discharge of the duties of that office.

Here, at least one class member has filed a complaint with the San Francisco District Attorney's Office as well as with the San Francisco Sheriff's Department and Sheriff Ross Mikarimi. Neither the district attorney, the Sheriff, nor the AG, however, has taken any steps to "enforce" the prohibition against the UPL. Ironically, the San Francisco Sheriff's Department at the behest of Sheriff Mirkarimi and with the legal support of Mark Nicco has "enforced" a facially void "writ of possession" on Judicial Council form EJ-130 filed by non-lawyer receiver Kevin Singer.

30. **Craig Holden, President of California State Bar**. Craig Holden was elected President of the California State Bar in September, 2014 and was promptly sued by the former president (Joseph Dunn) who alleged that he was "fired" for Whistle-Blowing activities that related, among other things, to the failure of the State Bar to uphold its duty to enforce the prohibition against the unauthorized practice of law. This story was recently covered in the Los Angeles Times.[8] Mr. Holden as President of the State Bar is charged with performing a variety of functions, most notably here, the prevention of the unlawful practice of law. (***Keller v. State Bar of California***, (1999) 496 U.S. 1, 5; ***Keller v. State Bar*** (1989) 47 Cal. 3d. 1152, 1160, "*In addition to those duties, the State Bar enforces the law relating to the unlawful practice of law and illegal solicitation upholding...*" (Citations omitted)). Bus. & Prof. Code section 6001.1 provides that "*protection of the public shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions.*"

31. **City and County of San Francisco**. (***San Francisco Sheriff's Department, Ross Mirkarimi***). The City is subject to for municipal liability for maintaining the policy of allowing

---

[8] http://www.latimes.com/la-me-ln-cal-bar-20141113-story.html?track=rss;

"court-appointed receivers" to practice law without a license and by enforcing the receivers' facially void orders though the San Francisco Sheriff's Office. For purposes of **Monell** liability, it's the policy and practice of the City, through the San Francisco Sheriff's Department and Ross Mirkarimi, to enforce facially void "writs of possession," which are not filed and signed by licensed California attorneys authorized to practice law and are not obtained after "judgments" under the Unlawful Detainer Act (as mandated by CCP §715.050), but by non-lawyer receivers who are not members of the State Bar. This violates Bus. & Prof. Code §6125 as well California Rule of Court 3.1180 which required the received to obtain court "approval" to "hire" an attorney to file such a writ. On September 17, 2014, the San Francisco Sheriff's Department "served" a Notice to Vacate on Plaintiff and evicted him on November 6, 2014.

32. **City and County of San Francisco**. (**George Gascon, San Francisco Sheriff's Department**.) It's also the policy and practice of the San Francisco District Attorney's Office not to enforce the prohibition against the UPL. While Steve Cooley and the DA's Office in Los Angeles has bent over backwards to deal with the issue of the UPL in the context of immigration law, the DA's office in San Francisco has neglected to implement any policy to curb or prevent the UPL by court-appointed receivers. The DA's office has failed to provide any training or supervision regarding methods and procedures for assuring that the UPL is not taking place in the county by court-appointed receivers.[9] Specifically, Plaintiff filed a complaint against Mr. Singer back in June, 2014 with Maffei of the Consumer Fraud Department of theDA's office. The DA's office has failed to investigate his charges or respond to Mr. Singer's UPL.

33. **County of Los Angeles**. (*District Attorney Jackie Lacey*). The City is sued for municipal liability for maintaining the policy or practice of allowing "court-appointed receivers" to practice law without a license. Former District Attorney Steve Cooley and the DA's Office in Los Angeles proactively dealt with the issue of the UPL, but there is no indication that District Attorney Lacey has acknowledged or taken any steps to prevent the by court-appointed receivers. The Los Angeles' DA's office, under the direction of District Attorney Lacey, has failed to provide any training or supervision regarding methods and procedures for assuring that the UPL is not taking place in the county's courts by court-appointed receivers. The failure to provide

---

[9] The Ninth Circuit has found that four conditions for municipal liability must be satisfied in order establish municipal liaibilty for failing to take appropriate actions to preserve constitutional rights: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy `amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the `moving force behind the

training or enforce the prohibition against the UPL in the context of court-appointed receivers is a practice that has directly caused the constitutional violations of the members of the Class.

34. **County of Kern** (*Kern County District Attorney Lisa Green*). The County is sued for municipal liability under the holding of *Monell v. Dept. of Social Services of City of N.Y.* (1978) 436 U.S. 658, 694-695 on the grounds that it has failed to correct the policy or practice of allowing "court-appointed receivers" to practice law without a license.

35. **County of Marin**. (*Marin County District Attorney Edward S. Berberian*). The County is sued for municipal liability under the holding of *Monell v. Dept. of Social Services of City of N.Y.* (1978) 436 U.S. 658, 694-695 on the grounds that it has failed to correct the policy or practice of allowing "court-appointed receivers" to practice law without a license.

36. **City and County of Sacramento**. (*District Attorney Jan Scully*). The County is sued for municipal liability under the holding of *Monell v. Dept. of Social Services of City of N.Y.* (1978) 436 U.S. 658, 694-695 on the grounds that it has failed to correct the policy or practice of allowing "court-appointed receivers" to practice law without a license.

37. **City and County of Alameda**. (*District Attorney Nancy O'Malley*). The County is sued for municipal liability under the holding of *Monell v. Dept. of Social Services of City of N.Y.* (1978) 436 U.S. 658, 694-695 on the grounds that it has failed to correct the policy or practice of allowing "court-appointed receivers" to practice law without a license.

38. **City and County of Contra Costa**. (*District Attorney Mark Peterson*). The County is sued for municipal liability under the holding of *Monell v. Dept. of Social Services of City of N.Y.* (1978) 436 U.S. 658, 694-695 on the grounds that it has failed to correct the policy or practice of allowing "court-appointed receivers" to practice law without a license.

39. **Judge Barbara A. Meiers**. Judge Barbara A. Meiers is a judge at the Superior Court of California in Los Angeles County. She is sued in her individual and official capacity for aiding and abetting Mr. Singer's UPL by signing off on his stipulation on September 18, 2014 and allowing him to set hearings and practice law in her courtroom even though he is unlicensed and engaged in the UPL. (**RJN**, *Exhibit BM*).

40. **Judge Robert H. O'Brien**. Judge O'Brien is a judge at the Superior Court of California in Los Angeles County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL. He has allowed Mr. Singer to file pleadings, notice of hearings

constitutional violation.'" Oviatt v. Perace, 954 F.2d 1470, 1474 (9th Cir. 1992).

and even a request for a "contempt" on December 24, 2013. (**RJN**, *Exhibit RHO*). While Judge O'Brien curbed Mr. Singer's overreach of his power as a receiver by inking out the hearing for a contempt action, he did open his court as a forum for Mr. Singer's UPL. Judge O'Brien also rightly, unlike the vast majority of the other judicial defendants here, affirmatively curbed the law firms' request that Mr. Singer be given the right to engage the Sheriff as a private security force to "*to take and safely keep possession and control of the Properties.*" (**RJN**, *Exhibit RHO-1*, pg. 10, ¶18).

41. <u>**Judge David L. Brown**</u>. Judge Brown is a judge at the Superior Court of California in Sacramento County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL by allowing him to file pleadings, make court appearance, and represent clients. (**RJN**, *Exhibit DLB*).

42. <u>**Judge Lawence John Appel**</u>. Judge Appel is a judge at the Superior Court of California in Alameda County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL. (**RJN**, *Exhibit SS*).

43. <u>**Judge Laurel S. Brady**</u>. Judge Brady is a judge at the Superior Court of California in Contra Costa County. She is sued in her individual and official capacity for aiding and abetting Mr. Singer's UPL. (**RJN**, *Exhibit EE, Exhibit G*).

44. <u>**Judge Randolph Heubach**</u>. Judge Heubach is a judge at the Superior Court of California in Marin County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL. (**RJN**, *Exhibit I*).

45. <u>**Judge Marla Miller**</u>. Judge Miller is a judge at the Superior Court of California in San Francisco County. She is sued in her individual and official capacity for aiding and abetting Mr. Singer's UPL. (**RJN**, *Exhibit H*).

46. <u>**Judge James Stoelker**</u>. Judge Stoelker is a judge at the Superior Court of California in Santa Clara County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL. (**RJN**, *Exhibit Y*).

47. <u>**Judge Lorna H. Brumfield**</u>. Judge Brumfield is a judge at the Superior Court of California in Kern County. She is sued in her individual and official capacity for aiding and

abetting Mr. Singer's UPL. (**RJN**, *Exhibit V*).

48. <u>**Judge Delbert C. Gee**</u>. Judge Gee is a judge at the Superior Court of California in Alameda County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL. (**RJN**, *Exhibit M*).

49. <u>**Judge Harold Kahn**</u>. Judge Kahn is a judge at the Superior Court of California in San Francisco County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL, including his signing off on Mr. Singer's stipulations. (**RJN**, *Exhibit HK*).

50. <u>**Judge David B. Flinn**</u>. Judge Flinn is a judge at the Superior Court of California in Contra Costa County. He is sued in his individual and official capacity for aiding and abetting Mr. Singer's UPL, including his signing off on Mr. Singer's orders. (**RJN**, *Exhibit DBF*).

51. <u>**Judge Lynn O'Malley Taylor**</u>. Judge Lynn O'Malley Taylor is a judge at the Superior Court of California in San Francisco County. She is sued in her individual and official capacity for aiding and abetting Mr. Singer's UPL in several cases. (CGC-10-510760; CGC 14-542184[10]). At an October 20, 2014 hearing, she terminated a hearing on a tenant's Claim of Right to Possession when the tenant's counsel asked if she was allowing Mr. Singer to practice law without a license. Mr. Singer had filed for a "writ of possession" without having obtained a judgment under the Unlawful Detainer Act as mandated by CCP 715.050. (**RJN**, *Exhibit LOT*).

52. <u>**Judge Judith Craddick**</u>. Judge Craddick is a judge at the Superior Court of California in Contra Costa County. She is sued in her individual and official capacity for aiding and abetting Mr. Singer's UPL filing of pleadings and other legal documents.. (**RJN**, *Exhibit JC*).

53. <u>**Judge A. James Robertson II**</u>. Judge Robertson is a judge in the Superior Court of

---

[10]
http://webaccess.sftc.org/Scripts/Magic94/mgrqispi94.dll?APPNAME=WEB&PRGNAME=caseinfoscreens&ARGUMENTS=-ACGC14542184,-AT,-AGenerated\%3A%20Nov-19-2014%2012\%3A25%20pm,-A00315649,-AD,-AOCT-14-2014,-ANOV-05-2014,-ASort%20by%20Party%20Name,-ASort%20by%20Name,-AS,-AS,-AD,-AA,-A,-A,-A

| SINGER, KEVIN 11150 WEST OLYMPIC BLVD. LOS ANGELES, CA 90064 | OTHER | Pro Per | OCT-23-2014 BOND OCT-23-2014 GENERIC CIVIL FILING (NO FEE) NOV-05-2014 EX PARTE APPLICATION FOR ORDER $60.00 PAYMENT |
| --- | --- | --- | --- |

San Francisco. He aided and abetted Mr. Singer's UPL by allowing him to appear in court and present oral argument, to file pleadings, and represent clients. On July 31, 2014,[11] Judge Robertson allowed Mr. Singer to practice law in his courtroom and even issued him an order allocating him fees to defend himself in a federal civil rights lawsuit against Mr. Singer based on his UPL. He is sued in his individual capacity and his official and administrative capacity. Judge Robertson also aided and abetted Mr. Singer's UPL in another case in which an appeal was taken. (CGC-09-492710; **RJN**, ***Exhibit JR, Exhibit JR-1***).

54. **Judge Donald Evans Quidachay**. Judge Quidachay is a judge in the Evictions Division of the San Francisco Superior Court, Department 501. On May 6, 2014, he was presented with pleadings that asserted that the court-appointed receiver, Mr. Singer, was engaging in the UPL by filing pleadings, including a request for a writ of possession.  Judge Quidachay stated that the objection to Mr. Singer's alleged misdemeanor under Bus. & Prof. Code §6126(a) was untimely. He has aided and abetted Mr. Singer by allowing him to come into in his court room and commit the misdemeanor of UPL. He has willfully colluded with Mr. Singer's conspiracy to practice law without a license. He signed Mr. Singer's drafted "writ of possession" on August 20, 2014 knowing very well that such a writ can issue only "pursuant to a judgment for possession in an unlawful detainer action." (CCP §715.050).  He is sued in his individual capacity and his official and administrative capacity.

55. **Judge Lillian Sing**. Judge Lillian Sing is a judicial officer at the San Francisco Superior Court. She has aided and abetted Mr. Singer's UPL. For instance, on April 18, 2014, she allowed Mr. Singer and Mr. McKay to come into her court-room and set times for Mr. Singer's request for a writ of possession. In assigning Mr. Singer court dates and allowing him to request hearing dates, she participated in his crime of practicing law without a license and colluded in his UPL conspiracy. She is sued in her individual and official capacity.

56. **Chief Justice Tani G. Cantil-Sakauye**. Chief Justice Cantil-Sakauye is the Director of the Judicial Council, the state agency responsible for assuring that the law, statutes, and court rules and procedures are consistent with constitutional guarantees.

---

[11]

http://webaccess.sftc.org/Scripts/Magic94/mgrqispi94.dll?APPNAME=WEB&PRGNAME=ValidateCaseNumber&ARGUMENTS=-ACPF10510760

| JUL-30-2014 | ORDER ON EX PARTE APPLICATION (AUTHORIZING RECEIVER) |
|---|---|

Defendant Chief Justice Cantil-Sakauye is a public agency director responsible for a public entity, pursuant to 42 U.S.C. §121319(1)(A)&(B). She denied a class member's Petition for Review (S218853[12], file July 9, 2014) in which he sought declaratory and injunctive relief against Mr. Singer's unlawful practice of the law in the San Francisco Superior Court. By failing to grant the petition, she has tacitly sanctioned Mr. Singer's criminal conduct and acted in the complete absence of all her jurisdiction. Defendant Chief Justice Cantil-Sakauye is sued in her official, individual, and administrative capacity.

57. Chief Justice Cantil-Sakauye is also authorized under Gov. Code §68501 to appoint communities to study the "means" for improving the "administration of justice." She is also charged with the duty of preparing Judicial Council forms (Gov. Code §68511) to help implement court rules and enactments. She has failed to appoint any "committee" to "study" the UPL in the context of receiverships. She also has failed to produce any forms that allow a receiver to appear in court to seek "approval" to hire an attorney under CRC 3.1180 without inadvertently engaging in the UPP. She has failed to produce any form that would provide notice to an opposing party as well as the court that a receiver is acting as an "agent" of the court (CRC 3.1179) as opposed in exercising some right to self-representation on matters of his "own interests." In failing to fabricate such forms, she has enabled Mr. Singer's UPL conspiracy and to perpetuate and deceive the court that he is entitled to practice law solely based on his appointment as receiver.

58. **Judge Anthony Kline**. Judge Kline is the Presiding Judge of Division Two of the Court of Appeals for California, First District. He summarily denied Plaintiff's writ of mandate (A141788) seeking to enjoin Mr. Singer's unlawful practice of law. On July 31, 2014, he summarily dismissed an appeal (A142115) related to Mr. Singer's unlawful practice of law,[13] essentially denying the class member any recourse to address the issue

---

[12]
http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2078061&doc_no=S218853
[13]
http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=1&doc_id=2079756&doc_no=A142115

of Mr. Singer's unlawful practice of law. In refusing to uphold the law and enjoin Mr.

Singer's violation of §6126(a), judicial defendant Kline has tacitly or effectively

approved and sanctioned and aided Mr. Singer in the commission of the crime and UPL

conspiracy. He is sued in his individual and official capacity.

59. **Judge James Richmond**. Judge Richmond is an appellate judge in Division

Two of the Court of Appeals for California, First District. He summarily denied a

Plaintiff writ of mandate (A141788) seeking to enjoin Mr. Singer's unlawful practice of

law. In refusing to uphold the law as mandated by Judicial Canon 3B(2) and refusing to

enjoin Mr. Singer's violation of Bus. & Gov. Code 6126(a), judicial defendant Richmond

has tacitly approved and sanctioned and aided Mr. Singer in the commission of the crime.

Judge Richmond has an unflattering reputation in the legal community for turning a blind

eye on judicial misconduct or implicating "lawyers" rather than judges.[14] He is sued in

| 07/31/2014 | Dismissal order filed. | Respondent's unopposed motion to dismiss is granted and the above-entitled appeal is hereby dismissed. |
|---|---|---|

[14] In ***In re Henry James Koehler*** (A125012), Judge Richmond summarily denied two habeas corpus petitions before he got it right and granted the third petition. But by that time the mid-70ish year old Princeton alumni, University of Michigan Law School educated lawyer, James Henry Koehler, had spent 10 days in jail (two five day stints), was disbarred, was financially and professionally ruined, and had moved backed to Ohio where the attorney who represented him speculated that it was likely that he was dead. Now some would argue that his death (negligent homicide by judicial fiat?) could not or should not be imputed to trial judge Susan I. Etezadi who issued the orders of contempt because his death was too attenuated from her orders or the delay of Judge Richmond in, not exactly upholding the law, but putting a long delayed end to the petty ego-damaged abuse in her position as a judicial officer. While Judge Richmond would scold the trial judge for not "crossing her 'ts' and totting her 'i'" in using the "*ultimate weapon*" of contempt, he uttered nary a word about the "ultra vires" acts of the Judge Susan I. Etezadi. (Is contempt or incarceration a matter for facile penmanship metaphors?) However, he did take it upon himself to speculate whether Henry James Koehler was being "contumacious" and thereby somehow incited and provoked his incarceration on an "*ad infinitum*" basis. Of course, Henry James submitted to the trial court's jurisdiction and went along with being thrown in jail for not complying with a facially void sanction order, but that did not deter Judge Richmond from impugning Henry's motives and deflecting attention from the trial judge's outrageous conduct. It's difficult to say whether the greater outrage lies with the sadistic trial judge who blatantly, recklessly, and arrogantly abuses her power or the appellate judge who fabricates excuses for her and enables the insanity, that is, the trial judge's belief that she has the right to throw an attorney in jail "ad infinitum" and on the basis of sanctions under Family Code §271 that did not even

his individual and official capacity.

60. **Judge Cynthia Ming-mei Lee**. Judge Lee at all times applicable herein was the Presiding Judge of the San Francisco Superior Court with authority to administer, implement, and enforce the state's statute related to the unauthorized practice of law. She had authority to promulgate policies and procedures for doing so. She is sued in her official capacity as an officer, agent, and employee of the City and County of San Francisco for damages and prospective injunctive relief.[15] She is sued in her individual and in her administrative capacity for damages for acts taken as an administrator and for failing to correct of the practice of allowing court-appointed receivers to file pleadings and practice and schedule hearings on their "pro se" motions. She was notified repeated by letter that Mr. Singer was engaged in the UPL.

61. **Scott McKay**[16]. Scott McKay is the lawyer for Mr. Coombs and Ms. Woods and is a named Defendant and is sued in his individual capacity for aiding and abetting Mr. Singer's UPL. He has provided Mr. Singer legal support in the state law arbitration case of ***In Re Coombs*** (CPF 10-510760) in the San Francisco Court. In the arbitration proceeding, he drafted the order seeking the appointment of Mr. Singer to enforce the "forced sale" in accordance with the 2007 TICA. Although Mr. McKay, as the "party seeking the appointment of the receiver," was not to come to any "understanding" or "agreement" with the receiver (CRC 3.1180(b)), Mr. McKay has encouraged and conspired with Mr. Singer to commit the crime of practicing law without a license. In fact, Mr. Singer's billing statement showed that he and Mr. McKay coordinated the timing of Mr. Singer's motion and that he and McKay had numerous correspondences regarding his ex parte hearing. At the May 6, 2014 hearing before Judge Quidachay, Mr. McKay conceded that Mr. Singer was not an attorney and he effectively conceded that he was committing a crime but he nevertheless argued and tried to persuade Judge Quidachay, on Mr. Singer's behalf, that Mr. Singer was authorized to evict Plaintiff without first obtaining a judgment under the Unlawful Detainer Act. Mr. McKay, as an officer of the court, knows that California Rules of Professional Conduct 1-300(A) provides that *"[A] member shall not aid any person or entity in the unauthorized practice of law."* Yet, he deliberately violated this rule and colluded with Mr. Singer in the conspiracy to evict Plaintiff, which occurred on November 6, 2014. He is sued in

---

apply to this "attorney" who was representing his client.

[15] ***Will v. Michigan Department of State Police***, 491 U.S. 58, 77 (1989).
[16] ***Dennis v. Sparks***, 449 U.S. 24, 28 (1980) (holding that private parties who corruptly conspired with a state judge acted "under color of law").

his individual capacity.

62. **Michael Coombs**. Mr. Coombs has aided and abetted Mr. Singer in the UPL by providing declarations in his action in the San Francisco Superior Court. (CGC 10-510760). He has colluded in Mr. Singer's conspiracy to practice law without a license by loaning him money to defend against charges that he is in fact practicing law without a license. (District Court, ND of Cal. cv-14-3250 WHA). He is sued in his individual capacity.

63. **Tamara Woods**. Ms. Woods has aided and abetted Mr. Singer in the UPL by providing declarations in his action in the San Francisco Superior Court. (CGC 10-510760).  She has colluded in Mr. Singer's conspiracy to practice law without a license by loaning him money to defend against charges that he is in fact practicing law without a license. (District Court, ND of Cal. cv-14-3250 WHA). She is sued in her individual capacity.

## VII. FACTUAL ALLEGATIONS

### A. Statutory Framework for Unauthorized Practice of Law

64. Judicial officers have no authority to determine who practices law. The State Bar Act (Bus. & Prof. Code, § 6000 et seq.) provides the comprehensive legislative scheme for regulating the practice of law. It prohibits the practice of law by anyone who is not an active member of the State Bar. (*J.W. v. Superior Court* (1993) 17 Cal. App. 4th 958, 965). Since the passage of the State Bar Act in 1927, the general rule has been that *"[w]hile any person may represent himself, and his own interests, at law and in legal proceedings,"* no person shall practice law for another unless he or she is an active member of the State Bar. (*Abar v. Rogers* (1981) 124 Cal.App. 3d 862, 864; *J.W. v. Sup. Ct*., supra at 965). The prohibition against unauthorized law practice is within the state's police power and is designed to ensure that those performing legal services do so competently. (*Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Ca. 4th 119, 127). Section 6125 articulates a strong public policy favoring the practice of law in California by licensed State Bar members. (*Birbrower*, *supra*, 134).

### 1. Section 6125

65. Bus. & Prof. Code section 6125 thus states: "*No person shall practice law in California unless the person is an active member of the State Bar.*" A person who engages in the unauthorized practice of law may be guilty of a misdemeanor or felony (§6126), and subject to civil penalties (§6126.5), and contempt (§6127). A single incident of practicing law without a license constitutes a statutory violation. (*People v. Ring* (1937) 26 Cal. App. 2d Supp. 768, 773; disapproved on other grounds in *Birbrower*, *supra*, 17 Cal. 4th, at 129).

## 2. Exceptions to Section 6125

66. Exceptions to §6125 are narrowly drawn, strictly interpreted and are generally limited to allowing out-of-state attorneys to make brief appearances before a state court. Title Nine Rules, 9.40-9.48, provide exceptions to §6125 for "out-of-state" attorney or certified law students (CRC 9.42) but there are no "exceptions" for "non-attorneys." The Legislature has made two exceptions to section 6125, one for international disputes resolved in California under the state's rules for arbitration and conciliation of international commercial disputes. (CCP §1297.11 et seq).[17] The other for labor negotiations and arbitrations arising under collective bargaining agreement in industries subject to federal law. (*Teamsters Local v. Lucas Flour Co*. (1962). 369 U.S. 95, 103).

## 3. No Judicial Exceptions to Section 6125

67. In *Birbrower*, the state Supreme Court "*declined*" to fashion an "*arbitration exception to section 6125's prohibition of the unlicensed practice of law*," reasoning that an "*exception for arbitration is best left to the Legislature*." (*Birbrower*, *supra*, 133-134). In rejecting the plea of an exception, the Supreme Court concluded, supra, at 131-133:

> This contention is without merit because it contravenes the plain language of the statute. Section 6125 clearly states that *no person* shall practice law in California unless that person is a member of the State Bar. The statute does not differentiate between attorneys or nonattorneys, nor does it excuse a person who is a member of another state bar. (6) It is well-settled that, in determining the meaning of a statute, we look to its words and give them their usual and ordinary meaning. (*DaFonte* v. *Up-Right, Inc.* (1992) 2 **Cal**.4th 593, 601 [7 **Cal**. Rptr.2d 238, 828 P.2d 140]; *Kimmel* v. *Goland* (1990) 51 **Cal**.3d 202, 208-209 [271 **Cal**. Rptr. 191, 793 P.2d 524].) "[I]f statutory language is `clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*Tiernan* v. *Trustees of **Cal**. State University & Colleges* (1982) 33 **Cal**.3d 211, 218 [188 **Cal**. Rptr. 115, 655 P.2d 317].) (5b) The plain meaning controls our interpretation of the statute here because Birbrower has not shown "that the natural and customary import of the statute's language is either `repugnant to the general purview of the act' or for some other compelling reason, should be disregarded...." (*Id*. at pp. 218-219.)

## 4. The Right to Self-Representation Does Not Apply to Individuals Acting in a Representative Capacity.

68. California appellate courts have uniformly refused to fashion exceptions to §6125 for

---

[17] This exception provides that in a commercial conciliation in California involving international commercial disputes, "The parties may appear in person or be represented or assisted by any person of their choice. A person assisting in representing a party **need not be a member** of the legal profession or licensed to practice law in California.' (CCP §1297.351).

non-attorneys acting in "representative" capacities.[18]  These courts have categorically rejected the legal argument that individuals acting in a "representative capacity" are acting in "pro per." For instance, in ***City of Downey v. Johnson*** (1968) 263 Cal. App. 2d, 775, the Court of Appeals ruled that a non-lawyer representing his mother's estate as conservator and as executor after her death was held incapable of appearing in propria persona on behalf of her estate. The court expressly rejected the theory that "`an administrator, executor or guardian'" could "`***practice law in matters relating to his trusteeship on the theory that he is practicing for himself***.'" (*Id.* at p. 779).

### 5. Judgments and Orders Obtained by Non-lawyer Receiver Are a Nullity.

69. Orders or judgments obtained by the non-lawyer receiver are a nullity. (("*The general American rule is that an unlicensed person cannot appear in court for another person, and that the resulting judgment is a nullity.*" ***Russell v. Dopp*** (1995) 36 Cal. App. 765, 775; "*A judgment obtained against a party represented by an unlicensed person is invalid.*" 1 Witkin, Cal. Procedure (3d ed. 1985; Attorneys, § 294, p. 330; "*A nonattorney trustee who represents the trust in court is representing and affecting the interests of the beneficiary and is thus engaged in the unauthorized practice of law.*" ***Ziegler v. Nickel*** (1998) 64 Cal. App. 545, 549; "*Thus, one holding a special power of attorney cannot act as an attorney for another by virtue of the power of attorney.*" ***People ex rel. Dept. of Public Works v. Malone*** (1965) 232 Cal. App. 2d 531, 537).

### B. Statutory and Regulatory Framework Related to Appointment of Receivers.

70. The California Supreme Court has stated that "[*T*]*he appointment of a receiver is a* ***drastic remedy****, may involve unnecessary expense and hardship and courts carefully weigh the propriety of such appointment in exercising their discretion to appoint a receiver particularly if*

---

[18] *See, ***Torres v. Friedman*** (1985) 169 Cal. App. 3d 880, 888, A purported substitution of attorney form was ineffective because it purported to substitute a non-attorney guardian ad litem as the attorney of record; ***City of Downey v. Johnson*** (1968) 263 Cal. App. 2d 275, 279, a nonlawyer representing his mother's estate as conservator and as executor after her death was incapable of appearing in court on behalf of estate;  ***Abar v. Rogers*** (1981) 124 Ca. App. 3d 862, 865, a husband, not licensed to practice law, may not represent his wife as a plaintiff in civil suit; ***In re Gordon J*** (1980) 108 Cal. App. 3d 907, 914, juvenile not entitled to have father assist him in his defense or represent him since father was not member of the bar; ***Campell v. Jewish Com. For P. Services*** (1954) 125 Cal. App. 2d 771, non-lawyer brother could not appear as attorney for his sibling in a libel suit).

*there is an **alternative remedy***." (***Hoover v. Galbraith*** (1972) 7 Cal. 3d 519, 528)..)

71. In California, a receiver may only be "*appointed in the class of cases expressly set forth in statute*." (***Marsch v. Williams*** (1994) 23 Cal. App. 4th 238, 246; 6 Witkin, Cal. Procedure, (3 ed. 1985) Provisional Remedies, supra, § 340, pg. 288; Miller v. Oliver (1917) 174 Ca. 407, 410. The ***Marsch*** court explained that great care must be taken in "*narrowly defining the circumstances*" because the appointment of a receiver is tantamount to the statutory authorization for the taking of the property of another and transferring it to the agent of a court. (*supra*, 247).[19] This implicates the 14th and 5th Amendments concern for the taking of property without due process of law. It also raises procedural due process issues regarding the standards and procedures for the exercise of the statutory right to appoint a receiver and the due process safeguards to prevent improper takings.

72. Code of Civil Procedure section 564 provides:

"A receiver may be appointed, in the manner provided in this chapter, by the court in which an action or proceeding is pending in any case in which such court is empowered by law to appoint a receiver.
"In superior courts a receiver may be appointed by the court in which an action or proceeding is pending, or by a judge thereof, in the following cases: ...

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt; ...

"7. In all other cases where receivers have heretofore been appointed ***by the usages of courts of equity***."

73. In some mortgages and deeds of trust, there are provisions stipulating that a receiver may be appointed in the event of a default. One California appellate court has viewed such a

---

[19] ***Monarsch***, supra, at 247-248: "…*When exercised, it means <u>the taking of property</u> by the court from one who may turn out to be the rightful owner thereof, and transferring it, pro re nata, to an agent of the court vested with power to handle and dispose of it according as the court may direct for the purposes of the action in which such agent or receiver is appointed. There is no power vested in the courts more jealously guarded or safeguarded than this very power to appoint a receiver to take, for the court, the possession and control of the property of others, and this is because, as above suggested, <u>the exercise of the power may mean the divesting the owner of his lawful right to remain in possession of his property</u>. It is, therefore, obvious that, while the power to appoint a receiver is provisional and an ancillary remedy, its scope may go beyond that of a mere remedy and <u>strike at the very substance of a person's property rights</u>*."

"stipulation in a mortgage" as "*an agreement in* **equity** *that should not be ignored*," and

presumably given effect or at least some "*evidentiary weight*." (**Barclays Bank of California v.**

**Superior Court** (1977) 69 Cal. App. 3d 593, 601-602). In **Barclays**, the court took note of the

"**New York rule**" that does not consider it "*inequitable to take the property out of an owner's*

*hands pending an action to foreclose the mortgage*" if the "*parties have agreed, that, in case of a*

*default, a receiver shall be appointed*." (**Barclays**, supra, at 601-602, quoting **C.B. Keogh**

**Manuf'g Co. v. Whiston**, 14 N.Y.S. 344).

74. As a result of these stipulations coupled with the broad reading of statutory language

related to "usages of equities," financial institutions routinely include such stipulations in their

legal instruments and argue that they are "*entitled to the appointment of receivers*" in accordance

with the stipulations in either the deed of trust or mortgage without making any showing that the

real property security (rents, etc.) is inadequate to service the debt. (**Barclays**, *supra*, at 597;

**Mines v. Superior Court** (1932) 216 Cal. 776; **Lovett v. Point Loma Development Corp**. (1968)

266 Cal. App. 2d 70.[20]  In short, an owner's property is handed over to the receiver on the bare

allegations of a plaintiff and without the need for an evidentiary hearing on the factual and legal

issues of "default." If a trust deed further provides that there is no need for an undertaking or a

bond, the trial court will even waive those court rules. (*See, **RJN**, **Exhibit E***, pg. 2/14-17). Mr.

Singer just files his "pleadings" in pro per (UPL), provides "points and authorities" for the sale,

and the trial court rubber stamps the sale "for the best interest of the parties." (**RJN**, **Exhibit**

**LHB**, pg. 5/4-23).

## C. The Various Appointments of Mr. Singer In This Class Action.

75. In the 200 cases or so in which Mr. Singer has been appointed as a receiver[21],

the courts have rubber-stamped every request for appointment without ever considering if

---

[20] **Lovett v. Point Loma**, *supra*, 73-75: "*Where the lienholder seeks enforcement of a provision in*
*the lien agreement conferring the right to collect rents and apply such upon the secured*
*indebtedness, the authority to appoint a receiver is conferred by Code of Civil Procedure,*
*section 564, subdivision 7.*"

[21] *See Mr. Singer's reference to his "Case List" at his web page.
http://www.receivershipspecialists.com/case-list/

there is an "alternative"[22] to the "*drastic remedy*" that is the appointment of a receiver. In fact, judicial defendant Wynne Carvil of the Superior Court of Alameda granted Budget Finance Company's unopposed motion for the appointment of a receiver in a "tentative ruling" in a "law and motion" proceeding. Gregory Taylor's  property was simply handed over to Mr. Singer without any type of evidentiary hearing and in apparent contravention of fundamental notions of due process. (**RJN**, *Exhibit L*, Motion to Confirm Appointment of Receiver, RG 10499443).

76. Even when a defendant such as Benyam Mulugeta hires an attorney who provides a memorandum of points and authorities opposing the "drastic remedy" of the appointment of a receiver on equitable grounds, the trial judges routinely rubber stamp the requests for appointment which are normally brought by banks or other financial institutions that are represented by high-profile law firms. (**RJN**, *Exhibit M, Lone Oak Fund, LLC v. Mulugeta*, RG 12634973).  Four days after Mr. Mulugeta's counsel files his opposition, the judicial defendant Delbert C. Gee granted the motion to appoint the receiver in a half-paragraph order. (**RJN**, *Exhibit N*). Not only were there no clear, written, or published statutory standards or criteria that defendant had to satisfy in order to defeat the appointment, the judicial defendant provided no written explanations or reasons for granting the motion. In that regard, there is only a scant record on appeal and no transcript of the law and motion hearing on which the defendant could fashion some response to the court's ruling.

77. The scope of a trial court's appointment often exceeds the statutory limits or is amended thereafter without regard to those limits. For instance, in Lone *Oak Fund v. Mulugeta*, no sooner had Mr. Singer been appointed then he filed pleadings, appeared in court without an attorney (UPL), and asked for an ex parte hearing to expand his rights and to allow him to issue "certificates of indebtedness" to support the receivership estate and his fees and expenses for managing the property. (**RJN**, *Exhibit O*). Despite Mr.

---

22 "[T]he availability of other remedies does not, in and of itself, preclude the use of a receivership. (*Sibert v. Shaver* [(1952)] 113 Cal.App.2d [19,] 21 [247 P.2d 609].) Rather, a trial court must consider the availability and efficacy of other remedies in determining whether to employ the extraordinary remedy of a receivership. (*Alhambra-etc. Mines v. Alhambra G. Mine (1953) 116 Cal.App.2d 869, 873 [254 P.2d 599].*)" (*City and County of San Francisco v. Daley,*

Mulugeta's objection that this would undermine the fair market value of the property (**RJN**, *Exhibit P*), judicial defendant Gee allowed Mr. Singer's unlawful practice of law, his ex parte hearing, and granted him new powers. The judicial defendant then signs off on Mr. Singer's "proposed order" without changing a word. (**RJN**, *Exhibit Q*).

78. In a case in the Superior Court of Contra Costa County, judicial defendant Judith A. Sanders appointed Mr. Singer receiver based on the stipulations in the deed of trust (which stated… "in the event of a default under the Borrowing Agreement") and the Plaintiff's  allegations in the complaint of the existence of a default. (**RJN**, *Exhibit R*, pg. 1/25-2). At an ex parte hearing on the proposed order to stipulate to a receiver, judicial defendant Judith Sanders signed off on the order prepared by the law firm even though the order purported to allow Mr. Singer to "evict tenants." (**RJN**, *Exhibit R*, pg. 6/16). While CCP §564(b)(7) provides that a receiver may be appointed "in an action for unlawful detainer," there was no pending action, no proof the tenants were in breach, and a question of whether Mr. Singer has standing to bring such an action because he is not the landlord, owner, or a new purchaser.[23] In Los Angeles county, Mr. Singer sought an order allowing him to rely on the "Sheriff" to ensure an owner left his property. (*See, **RJN**, *Exhibit RHO-1*, pg. 10/13-16).

79. In another case, Mr. Singer seems to have colluded in a deliberate fraud on the court and an owner as to his "powers" as a receiver.[24] He was appointed pursuant to CCP §564(b)(3) to enforce an arbitration award requiring the "owner's cooperation" in the "forced sale" of the owner's property under a Tenants-in-Common Agreement. (**RJN**,

*supra,* 16 Cal.App.4th at p. 745, 20 Cal.Rptr.2d 256.)

[23] ***Berry v. Society of St. Pius X*** (1999) 69 Cal.App.4th 354, 358**;** The procedure in unlawful detainer "is covered in [Code of Civil Procedure section] 1161 et seq. The remedy, as broadened by statutory changes, is available in three situations: [¶] (a) *Landlord* against tenant for unlawfully holding over or for breach of the lease (the traditional and most important proceeding). ([Code Civ. Proc., http://www.receivershipspecialists.com/case-list/] 1161;...] [¶] (b) *Owner* against servant, employee, agent, or licensee, whose relationship has terminated. ([Code Civ. Proc., §] 1161(1);...] [¶] (c) *Purchaser* at sale under execution, foreclosure, or power of sale in mortgage or deed of trust, against former owner and possessor. ([Code Civ. Proc., §] 1161a;...]" (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 599, p. 69.)

[24] ***Turner v. Superior Court***, (1977) 72 Cal. App. 3d 804. The requirements of Code of Civil Procedure section 564 are jurisdictional, and without a showing bringing the receiver within one of the subdivisions of that section the court's order appointing a receiver is void. (*Rondos v.*

*Exhibit S*). The owner informed Mr. Singer that the TIC Agreement provided for the "forced sale" of the "defaulting Cotenant's' cotenancy share in the TIC property," and that his interest was not a "tenancy-in-common" but a separately owned condominium that had been converted to a condo a year Mr. McKay even filed his petition to compel arbitration. Instead of returning to the court and asking for clarification of the arbitration award or the appointment or for permission to file an unlawful detainer under CCP §564(b)(3), he simply asked "in propria persona" for judicial defendant to issue a "writ of possession." Although "writs of possession" are only issued "pursuant to a judgment for possession in an unlawful detainer action" (CCP §715.050), Mr. Singer convinced judicial defendant to sign off, not on the approved Judicial Council form EJ-130, but his own drafted pleading. (**RJN**, *Exhibit T*). Mr. Singer was practicing law without a license while participating in a fraud.

### D. The Unauthorized Practice of Law Conspiracy In the Context of Receiverships.

#### 1. Incentives to Hire Non-Lawyer Receivers.

80. On his web site,[25] Mr. Singer identifies himself as the "President" of his firm Receiver Specialist. His "in-house counsel" is John Rachlin, a member of the California State Bar (SBN 166214).[26] Mr. Singer's unauthorized practice of law dovetails with the incentives lenders and other petitioning parties have for the appointment of a receiver. It is axiomatic that lenders have an incentive to appoint a receiver in order to avoid the delay and expense of hiring attorneys for a judicial foreclosure or some other legal proceeding such as an unlawful detainer action. If a deed of trust or mortgage contains a stipulation for a receiver in the event of a default, lenders can request a receiver and effectively regain control of the real property. The petitioning party at once regains controls over rental incomes or other income-producing activities and can call the shots through the receiver. On the other hand, the owner is deprived of his property, any income from rents, and is saddled with the new expenses of a receiver while trying to remain solvent. This 14th Amendment rights to notice and hearing are essentially ignored. As noted above, upon appointment, the owner's property is taken from him/her by operation of a statute and apparently without an evidentiary hearing or the need for a lender to prove or show a "default."

---

*Superior Court* (1957) 151 Cal. App. 2d 193, 195, [311 P.2d 113]).
[25] http://www.receivershipspecialists.com/

81. By hiring Mr. Singer as a receiver, lenders and petitioning parties are essentially hiring his firm, Receiver Specialists, with an "in-house" counsel at Mr. Singer's beck and call and a licensed broker, Mr. Marquis, who is available to sell any real property once Mr. Singer forces the parties to agree to sell. In one case, Satwant Singh complained that Mr. Singer had churned up $155,726.30 in fees and another $92,045.62 in "consultant fees," presumably to his confederates at Receiver Specialists. This occurred in the 15 month period between October 15, 2012 and February 13, 2014. (**RJN**, ***Exhibit U***).

### 2. Coercion to Stipulate to Sale.

82. Under the weight of Mr. Singer's receivership, property and business owners feel compelled to sell if they are to salvage any equity in their property or businesses. This is evinced in Mr. Singer's pro per pleading for an order of sale of real proper that he filed in the Superior Court of Kern County on June 25, 2013. (**RJN**, ***Exhibit V***). Likewise, Mr. Singer managed to get an order for the sale of real property in the Superior Court of Santa Clara County, including a "real estate commission" of $76,716 which Mr. Singer's colleague and real estate broker, Mr. Marquis, pocketed. (**RJN**, ***Exhibit W***). Mr. Singer supports and justifies the need for a sale by his bare allegations in his own pro per documents. (**RJN**, ***Exhibit X***). In the "Stipulated Distribution of Funds from the Sale" prepared by Mr. Singer "in propria persona" and filed by him in court (**RJN**, ***Exhibit Y***), he names his own price and walks away with fees of $31,258.23.

### 3. State Bar's Responses to UPL.

83. Assembly Bill 1159 was passed to enhance the State Bar's Office of the Chief Trial Counsel's (OCTC) enforcement powers to prosecute both lawyer and "*notarios*" fraud, a from of unauthorized practice of law that preys on California's large immigrant community.[27] Likewise, the State Bar Committee on Professional Responsibility and Conduct issued an Ethics Alert (Feb. 2, 2000) to remind California attorneys that they may not, among other things, aid foreclosure consultants (or other nonlawyers) in the unauthorized practice of law. (e.g., lawyers may not form partnerships or joint ventures with foreclosure consultants or other nonlawyers if any of the business activities involve providing legal services). In other words, lawyers may not, under the

---

[26] http://members.calbar.ca.gov/fal/Member/Detail/166214
[27] AB 1159, signed by Governor Brown on October 5, 2014, expanded the State Bar Act related to the unauthorized practice of law so that it would apply to "anyone who is not an attorney" and is advertising as a "notario" as opposed to a notary public. The ban related to "notarios" is intended to prevent confusion about this label which has been exploited by non-attorneys hoping to present themselves as attorneys. "Notario," in many Latin American nations, is a type of lawyer.

guise of serving as "in-house counsel" for foreclosure consulting businesses, perform legal services for clients.

### 4. Mr. Singer's Scheme to Practice Law Without a License.

84. Mr. Singer's UPL is not like those of the "notarios" who want to deceive the innocent and unsuspecting into believing they are "attorneys." Mr. Singer's motive is just the opposite. He wants lenders and other parties petitioning for a receiver to hire him as a "non-lawyer receiver" so that the lender can gain immediate control over a property or business and avoid the costs of hiring lawyers to undergo a foreclosure. As a non-lawyer receiver, unlike an attorney in a foreclosure action, he gains immediate possession and control without the delay or expense of a judicial foreclosure. But, at the same time, Mr. Singer markets his firm as a "one-stop shop" of in-house counsel, accountants, and licensed brokers who can dispatch a property. In one odd twist, a party sought to recover fees from a court-appointed receiver who was playing by the books and hiring attorneys as required by CRC 3.1180. The party's attorney presumed that the prior receiver "*would conduct her own legal work, as has the current referee, Kevin Singer.*" (**RJN**, *Exhibit ZZ*).

85. In this regard, Mr. Singer's UPL follows the example of "foreclosure consultants." Mr. Singer's associate, Mr. Rachlin, under the guise of serving as "in-house counsel" for their firm (Receivership Specialists is tantamount of a business/real estate foreclosure firm), is performing legal services for lenders and petitioning parties Mr. Singer is working with. For instance, in the Superior Court of Santa Clara County, Mr. Rachlin, while Mr. Singer practiced law and filed the pleadings (UPL), provided his declaration for an ex parte hearing on the sale of real property. He discussed with opposing counsel any "objections" they might have to Mr. Singer's ex parte order for sale of the property. (RJN, *Exhibit JR*, CIVMSC 11-00890). In Santa Clara Superior Court, Mr. Singer, acting in propria persona, had Mr. Rachlin file a similar pleading. (**RJN**, *Exhibit JR-2*). In short, Mr. Rachlin, behind the veneer of being in-house counsel, is providing legal support to Mr. Singer and legal services to the parties.

86. Besides using his "in-house counsel" at Receivership Specialist to perform legal services related to his receivership duties, Mr. Singer is even more brazen and cavalier about his UPL. At a hearing on May 6, 2014, a class member filed pleadings and raised the issue of his UPL. (**RJN**, *Exhibit AA*). Mr. Singer did not deny that he was appearing in court, filing legal pleadings, and seeking court orders, and practicing law. Rather, he suggested or implied that his "in-house" counsel could delegate to him authority to practice law. ("*The right to practice law*

*not only presupposes in its possessor integrity, legal standing and attainment, but also the exercise of a special privilege, highly personal and partaking of the nature of a public trust. It is manifest that the powers and privileges derived from it may not with propriety be delegated to or exercised by a nonlicensed person.*" ***McGregor v. State Bar*** (1944) 24 Cal.2d 283, 288). Judicial defendant Quidachay, who was presiding over the case, simply ignored the issue of Mr. Singer's UPL and dismissed the matter of a misdemeanor as "untimely."

87. Mr. Singer also insists that his duties as a receiver are his "own interests" or affairs and he has the right to "self-representation" regarding these matters. As noted above, Mr. Singer has the right to self-representation. However, when he's acting as a receiver he's an agent of the court and acting in a "representative capacity," not for his own interest. At October 20, 2014 hearing for one of the class members, Mr. Ruiz' attorney raised the issue of Mr. Singer's UPL. Mr. Singer insisted he had the right to act in "pro per" and judicial defendant Lynn O'Malley Tyler terminated the hearing when counsel asked if she was allowing Mr. Singer to "practice law without a license."

### 5. Aiding and Abetting Mr. Singer's UPL

### Attorneys

88. State Bar members are subject to discipline for "*aiding any person or entity in the unauthorized practice of law.*" [CRPC-1-300(A); see ***Geibel v. State Bar*** 91938) 11 C2d 412, 419-423, 79 P2d 1073, 1078-1079...*lawyers allowed their names to be used on pleadings prepared by unlicensed persons without attorney's review of supervision*; ***Matter of Valinoti*** (Rev. Dept. 2002) 4 Cal. State Bar Ct. Rptr. 498, 502;...*attorney deliberately aided and abetted unauthorized practice of law by relying on and permitting nonlawyers to prepare and file immigration applications, pleadings, and other documents.*) As noted above, Mr. Rachlin has filed pleadings for Mr. Singer while he practiced law without a license. He's also colluded with or clandestinely authored all of the pleadings Mr. Singer has filed on behalf of clients' of Receivership Specialists. Likewise, defendant McKay has appeared in court and presented oral argument on Mr. Singer's behalf. He has also aided and abetted Mr. Singer's misdemeanor by providing him "points and authorities" in opposition to a motion that Plaintiff had filed to vacate Mr. Singer's August 20, 2014 writ of possession. Mr. Singer had drafted the writ himself and judicial defendant attached his signature along with an impromptu "stay-away order." (**RJN**, ***Exhibit BB***). He also aided and abetted Mr. Singer's UPL by filing pleadings related to Mr. Singer's second and third writs of possession that affected Mr. Ruiz' right to possession. (**RJN**,

*Exhibit CC*). Furthermore, there is the issue of whether various attorneys, such as Brenda Cruz-Keith and Drexel A. Bradshaw deliberately aided and abetted Mr. Singer when they signed the stipulation prepared by the unlicensed receiver. (*See, **RJN**, **Exhibit H**, San Francisco Superior Court, CGC-10-504897). In the Superior Court of Marin, attorney Roger L. Meredith also signed off on a stipulation prepared by the unlicensed receiver. (*See, **RJN**, **Exhibit I**, pg. 4). In this class action, there are dozens of attorneys who have signed off on Mr. Singer's myriad "pro per" legal pleadings.

### Non-lawyers/Lay Persons

89. According to former District Attorney Steve Cooley's Manual on the Unauthorized Practice of Law, the various offices of the District Attorney are to investigate a non-lawyer's UPL or the aiding and abetting of such UPL. In his press release,[28] Mr. Cooley stated:

> "Unqualified and unlicensed con artists are preying on a growing number of unsuspecting victims, especially new immigrants,'' Cooley said. "They're not only taking their money but also violating their legal rights. As District Attorney, I am committed to combating this serious form of fraud."….

> "This office has initiated numerous investigations and prosecutions against these unscrupulous operators. We also have led statewide efforts to strengthen California's laws and the penalties for the unauthorized practice of law," Cooley said. "Working closely with the State Bar of California and community bar associations, I have launched a broad-scale effort to identify and prosecute these crimes."

In this class action, Mr. Singer's real estate broker has aided and abetted his UPL by providing him "declarations" supporting Mr. Singer's motion for a writ of possession.[29] Mr. Marquis also was present and choreographed with the San Francisco Sheriff's Department the wrongful eviction of Plaintiff on November 6, 2014.  Further, defendants Coombs and Woods have provided Mr. Singer with their "declarations" in support of his various unlawful motions. As

---

[28] http://da.lacounty.gov/mr/archive/2004/021904b.htm

[29] http://webaccess.sftc.org/Scripts/Magic94/mgrqispi94.dll?APPNAME=WEB&PRGNAME=ValidateCaseNumber&ARGUMENTS=-ACPF10510760

| MAY-06-2014 | UNLAWFUL DETAINER MOTION, 501, NTC OF MTN AND MTN FOR ORDER: 1) ISSUING A WRIT OF POSSESSION TO REMOVE ARCHIBALD CUNNINGHAM FROM THE PROPERTY LOCATED AT 1489 MCALLISTER ST, SF, CA 2) RESPONDENT IS ORDER TO STAY AWAY FROM 1489 MCALLISTER ST, SF, CA / DEC OF RICK MARQUIS; DEC OF J. SCOTT MCKAY; DEC OF KEVIN SINGER, SUBMITTED ON MAY-06-2014 BY RONALD E. QUIDACHAY. |
|---|---|

noted above, Plaintiff filed a complaint regarding Mr. Singer's UPL with the San Francisco District Attorney's Consumer Fraud Unit back in July, 2014.

### State Bar Association/Craig Holden

90. The United States Supreme Court pointed out in ***Keller v. State Bar of California*** 496 U.S. 1 that the broad statutory mission of the State Bar is to "*promote the improvement of the administration of justice*." It also noted that one of its functions was to "*prevent the unlawful practice of law*." (***Keller***, *supra*, at 5). However, as noted by Mark Geragos in his recently filed lawsuit, the State Bar and President Craig Holden have failed to enforce the UPL as mandated by AB 1159. In this class action, the class member's complaint to the State Bar regarding defendant McKay's aiding and abetting Mr. Singer's UPL was denied but the State Bar investigator invited him to resubmit it to the Office of the Chief Trial Counsel. Although Plaintiff has resubmitted his complaint, the State Bar has failed to enforce the prohibition against the ULP or investigate Mr. McKay's aiding and abetting of Mr. Singer's UPL.

### Attorney General Kamala Harris/District Attorney

91. On July 8, 2014, Plaintiff sent Attorney General Harris a letter complaining about Mr. Singer's UPL. The AG's willful failure to enforce the prohibition against the UPL in the context of non-lawyer receivers is equaled only by its unwillingness to admit or acknowledge the fact that Mr. Singer and his firm are engaged in the UPL.

### VII. Judicial Immunity As Applied to the Misdemeanor of Unauthorized Practice of Law.

92. In ***Mireless v. Waco*** (1991) 502 U.S. 9, the Supreme Court noted that judges have absolute immunity for "judicial acts" committed with malice, for erroneous decision, and even for acts committed in the "excess of jurisdiction." However, the Supreme Court, in ***Mirelss v. Waco***, also noted limits to immunity, recognizing that a judge's "criminal acts" are not subject to absolute immunity, citing[30] at fn 1 ***Ex Parte Virginia*** 100 U.S. 339, 348-349 (1880). In his dissenting opinion in ***Mireless***, Justice Stevens pointed out that a judge acts in a "judicial capacity[31]" when he has bailiffs drag a public defender back into court but not when he orders bailiffs to commit a battery on him. (*Id.*, at 14; "*He ordered them to bring respondent into his*

---

[30] ***Mireless v. Waco***, 502 U.S. 9, fn 1 (1991): The Court, however, has recognized that a judge is not absolutely immune from criminal liability, *Ex parte Virginia*, 100 U. S. 339, 348-349 (1880), or from a suit for prospective injunctive relief, *Pulliam* v. *Allen*, 466 U. S. 522, 536-543 (1984), or from a suit for attorney's fees authorized by statute, *id.*, at 543-544.

[31] ***Stumps v. Sparkman*** (1978) 435 U.S. 349 for the four-part test for determining when a judge acts in his official judicial capacity

*courtroom, and he **ordered them to commit a battery**. The first order was an action taken in a judicial capacity; the second clearly was not. Ordering a battery has no relation to a function normally performed by a judge.)*

93. In the instant case, the judicial defendants have allowed Mr. Singer, a non-lawyer, to come into their courtrooms and practice law without a license.  While the judicial defendants have each opened their courtroom as a forum for Mr. Singer to commit his misdemeanor, that doesn't make Mr. Singer's act any less criminal, it makes it more insidious. The judicial defendants decided, deliberately or inadvertently, to cloak his criminality in the guise of a "judicial act," but the fact is that the judges were simply "aided and abetting" the unauthorized practice of law. The law against the unauthorized practice of law has never been upheld by the judicial defendants or enforced by the Attorney General or Craig Holden. (***Rooker-Feldman*** does not apply to void judgments…)

94. Plaintiff is unable to identify any state or federal decision finding that a judge is immune from liability for "*aiding and abetting*" the authorized practice of law, a criminal as opposed to "*judicial act*." The state Commission on Judicial Performance, however, has censored a trial judge for "*aiding and abetting*" the unauthorized practice of law. On February 28, 1995, Victoria B. Henley found that Judge Thomas M. Kelly of the Alpine Judicial District of California, aided and abetted in the misdemeanor of the "unauthorized practice of law," (**RJN, Exhibit D**):

> The trial court determined that Judge Kelly, by agreeing that the Nevada attorney would handle the management of the lawsuits in the absence of a court order permitting the Nevada attorney to appear as counsel, after signing the complaints prepared by the attorney, ***unlawfully** aided and abetted the unauthorized practice of law*. (emphasis added).

In this class action, the judicial defendants have "signed" off on myriad legal pleadings and orders prepared by Mr. Singer and allowed him into their court rooms to present oral argument on these pleadings and commit the misdemeanor of practicing law without a license.

### FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. Section 1983) By Plaintiffs/Class Against All Defendants

### (Violation of Class Members' Civil Rights Under Color of State Law by Engaging in Conspiracy)

95. The Class Members reallege and incorporates herein by reference each and every

allegation and paragraph previously set forth.

96. California Penal Code §182 provides that two or more persons engage in a conspiracy when they collude and conspire to commit any crime, when they falsely maintain any suit, action or proceeding, or when they try to cheat or defraud any person of property by means by themselves are criminal. (Penal Code §182(a)(1-3)). Section §182(a)(5) also provides that there can be a conspiracy to "*pervert or obstruct justice, or the due administration of the law.*"

97. California Business & Professional Code §6125 provides that *"[N]o person shall practice law in California unless the person is an active member of the State Bar.*" Bus. & Prof. code §6126(a) provides that "*any person*" who "*holds themselves out*" as "*entitled to practice law*" but "*who is not a member of the State Bar*" or "*otherwise authorized to practice law by court rule or statute*" is "*guilty of <u>a misdemeanor</u>*" punishable to up to one year in jail. Under Bus. & Prof. Code §16240,[32] a person satisfies the elements of the misdemeanor of practicing law without a license when the person "practiced, or offered" to practice law but failed to have the requisite license required by the State Bar.

98. As detailed above, the judicial defendants as well as the non-judicial defendants have conspired with the court-appointed receiver Mr. Singer in the unauthorized practice of law and did so with the objective of depriving the class members of their real and personal property without due process of law. All of the judicial defendants are obliged under the Judicial Canon 3B to uphold the law and were on notice that the UPL is a misdemeanor. Nevertheless, they conspired with Mr. Singer and aided and abetted him in prosecuting his various actions and motions. By allowing Mr. Singer to come into their courtrooms "in propria persona" and under the guise that he was entitled to "self-representation" as a receiver, they also have conspired to violate Cal. Rules of Court 3.1180. This violation of the rules of court amounted to "improper government activity" under the Whistle Blower Act, that is, Gov. Code §8547.2(c).

99. All of the defendants have conspired with each other to violate the civil rights of the class members by participating in Mr. Singer's UPL conducted under the guise of his business,

---

[32] *See, Bus. & Prof. Code 16240.

1   Receiver Specialists. All of the judicial and non-judicial defendants have either affirmatively

2   participated in, or, at a minimum, promoted the conspiracy, by filing Mr. Singer's pleadings, by

3   providing him hearing dates, by providing sworn affidavits in support of his UPL scheme, by

4   providing oral argument in support his scheme, and by opening the court room as a forum for the

5   unlawful practice of law.

6       100. All the judicial and non-judicial defendants knew or should have known that Mr.

7   Singer's UPL by and through and with his "Receivership Specialists" firm was a misdemeanor

8   under Bus. & Prof. Code §6126(a), an "improper government activity" under the Whistle Blower

9   Act, and any resultant orders or judgments are to be considered a "nullity."

10       101 The actions of the judicial and non-judicial defendants were taken in bad faith, and

11   with malice toward the class members.

12       102. The conduct of the judicial and non-judicial defendants represents a violation of 42

13   U.S.C. §1983 given that their actions were undertaken under color of state law.

14       103. Class members are informed and believe that Defendants Singer and his employees

15   at Receiver Specialists acted knowingly and willfully, with malice and oppression, and with the

16   intent to harm the class members. Therefore, pursuant to Cal. Civ. Code §3294, the class

17   members are entitled to an award of punitive damages for the purpose of punishing said

18   defendants and to deter them and other from such conduct in the future.

19       104. As a direct and proximate result of the unconstitutional acts described above, the

20   class members have been irreparably injured.

21                **SECOND CAUSE OF ACTION FOR VIOLATION**

22                **OF CIVIL RIGHTS (42 U.S.C. Section 1983)**
             **By Plaintiffs/Class Against All Defendants**
             .

23                **(Bus. & Prof. Code §6125 As Applied Violates**

24                **Class Members' Procedural Due Process Rights)**

25       105. The class members reallege and incorporate herein by reference each and every

26   allegation and paragraph previously set forth.

27       106. The class members are constitutionally guaranteed procedural due process under the

28

5th and 14th Amendments, which requires both notice and an opportunity to be heard.[33] Before the class members could be deprived of their personal and real property or business, they had the right to be heard under the Fourteenth Amendment to the Constitution, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law."[34]

107. The class members had the constitutional right to adequate notice and "a meaningful opportunity"[35] to be heard on the issue of whether Mr. Singer's was engaging in the UPL and whether the state trial courts were opening their courtrooms as a forum for him to commit his misdemeanor and thereby unlawfully aiding and abetting his misdemeanor. (The "*right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society.*" ***Joint Anti-Fascist Comm. v. McGrath***, 341 U.S. 123, 168 (Frankfurter, J. concurring). The fundamental requirement of due process is the opportunity to be heard "*at a meaningful time and in a meaningful manner.*" ***Armstrong v. Manzo***, 380 U.S 545, 522 (1965).

108. In California, "*the prohibition against unauthorized law practice is within the state's police power and is designed to ensure that those performing legal services do so competently.*" (***Bribrower, Montalbano, Condon & Frank, P.C., et al. v. Superior Court***, (1998) 17 Cal. 4th 119, 127). The Attorney General and President of the State Bar know or should have known that they have been delegated the responsibility by the Legislature and state constitution to uphold and enforce the State Bar Act, particularly the prohibition against the UPL described in Bus. & Prof. Code §§6125-6128. They know or should know that the class members have no authority to "enforce" the prohibition against the UPL. The Attorney General, by failing to enforce the prohibition against the UPL, both at the state level and through each county's district attorney's office, has violated the class member's due process rights.

109. The President of the State Bar knows or should know that the class members do not have either the right or the authority to "enforce" the State Bar Act. By failing to adopt policies,

---

[33] See 7 Witkin, Summary of Calif. Law (9th ed.) Constitutional Law, §502.
[34] Also Calif. Const. Art. 1, §7.
[35] ***Boddie v. Connecticut*** (1971) 401 U.S. 371:

procedures, or issue an ethics advisory on the UPL in the context of receivership law, Mr. Holden and the State Bar have also violated the class members' due process rights under the 5th and 14th Amendments.

110. The judicial defendants are obliged under the Judicial Canon to uphold the law and are presumed to act "*in the lawful exercise of their jurisdiction.*" (**Canon 3B(2)**; "*A judge shall be faithful to the law regardless of partisan interests, public clamor, or fear of criticism, and shall maintain professional competence in the law.*"; **Evid. Code** 666). By failing to uphold the prohibition against the unlawful practice of law, the judicial defendants acted in excess of all of their jurisdiction in unlawfully aiding and abetting the misdemeanor, violated Canon 3B(2), and deprived the class members of their rights under the Due Process Clause of the 14th Amendment.

111. The actions of the judicial and non-judicial defendants were taken in bad faith, and with malice toward the class members. This was evinced by judicial defendant Quidachay's dismissal of the challenge to Mr. Singer's UPL at the May 6, 2014 hearing as "untimely." Similarly, judicial defendant's Lynn O'Malley Taylor's termination of an October 20, 2014 hearing when counsel for a class member asked her if she was allowing Mr. Singer to practice law without a license evinced malice. Finally, judicial defendant James Robertson's outrageous order to grant Mr. Singer's request for an attorney, to be paid at the class member's expense, to represent him in a civil rights suit in the federal court alleging Mr. Singer's UPL not only was in excess of all his jurisdiction but evinced malice. (Northern District of California, cv-14-3250.).

112. The conduct of the judicial and non-judicial defendants represents a violation of 42 U.S.C. §1983 given that their actions were undertaken under color of state law.

113. As a direct and proximate result of the unconstitutional acts described above, the class members has been irreparably injured.

### THIRD CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. Section 1983) By Plaintiffs Against Singer, All Judicial and Non-judicial Defendants)

### (Violation of Separation of Powers Clause)

114. Plaintiff realleges and incorporates herein by reference each and every allegation

and paragraph previously set forth.

115. The Separation of Powers Clause precludes judicial officers from acting in legislative capacities. (Calif. Const. Art 3, §3; "*The powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution*.). While the California Supreme Court recognizes that "*courts have fundamental inherent authority equity, supervisory, and administrative powers, as well as inherent power to control litigation before them*,"[36] there are constitutional limits on judicial authority. (***Green v. Ralee Engineering Co.*** (1998) 19 Cal. 4th 66, 71; "*…aside from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state.*").

116. The judicial Defendants knew or should have known that the Legislature enacted the State Bar Act, which granted the State Bar the authority to determine who is eligible or qualified to practice law in California.[37] The judicial Defendants knew or should have known that their "inherent authority" under the state constitution did not allow them to ignore Legislative intent, policy, or the statutory scheme related to the unauthorized practice of law. (Bus. & Prof. Code §§6125-6127). The judicial Defendants knew or should have known that the Legislature has not delegated the authority to determine eligibility to practice law to individuals or the judiciary. ("The right to practice law not only presupposes in its possessor integrity, legal standing and attainment, but also *the exercise of a special privilege, highly personal and partaking of the nature of a public trust*. It is manifest that the powers and privileges derived from it may not with propriety be delegated to or exercised by a nonlicensed person." ***McGregor v. State Bar*** (1944) 24 Cal.2d 283, 288).

117.  In allowing Mr. Singer to practice law in various courtrooms throughout the state, the named judicial defendants knew or should have known that they had no authority to override

---

[36] ***Rutherford v. Owens-Illinois, Inc.*** (1997) 16 Cal. App. 953, 967

[37] ***J.W. v. Superior Court*** (1993) 17 Cal. App. 4th 958, 965). Since the passage of the State Bar Act, originally enacted in 1927, the general rule has been that "*[w]hile any person may represent himself, and his own interests, at law and in legal proceedings*," no person shall practice law for another unless he or she is an active member of the State Bar. (***Abar v. Rogers*** (1981) 124 Cal.App. 3d 862, 864; ***J.W. v. Sup. Ct.***, supra at 965).

the Bus. & Prof. Code §§6125-6127 and allow Mr. Singer to commit a misdemeanor in their courtroom. They knew or should have known that under the Separate of Powers Clause they had no authority to judicially legislate and allow Mr. Singer to practice law without a license. They knew or should have known that neither they nor anyone else had the authority to delegate to Mr. Singer the right to practice law.

118.  In allowing Mr. Singer to commit a misdemeanor in their courtrooms, judicial defendants acted in the complete absence of their jurisdiction, thereby forfeiting the right to judicial immunity from suits for damages.

119. The effect of their violations of the Separation of Powers Clause was to deny the class members their fundamental procedural due process rights. The class members had no notice or reason to believe that judicial defendants would ignore the fact that Mr. Singer was engaging in the unauthorized practice of law or that they would refuse to enforce the law regarding the UPL and refuse to enjoin Mr. Singer's illegal action. They had no reason to believe that Mr. Singer, a non-lawyer without the skills, training, and legal education, and apparently lacking the requisite moral turpitude, would be allowed to practice law, present pleadings chock-full of memorandum of points and authorities, and presume to know what the law is.

120. The actions of the Defendants were taken in bad faith, and with malice toward the Plaintiff.

121. The conduct of the Defendants represents a violation of 42 U.S.C. §1983 given that their actions were undertaken under color of state law.

122. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has been irreparably injured.


**FOURTH CAUSE OF ACTION FOR VIOLATION
OF CIVIL RIGHTS (42 U.S.C. Section 1983)
By Plaintiffs/Class Against All Defendants
.
(Constitutional Challenge to Code of Civil Procedure §564 et. al.,
On its Face and As Applied Violated Class Members'
Substantive and Procedural Due Process Rights)**

123. The class members reallege and incorporate herein by reference each and every

allegation and paragraph previously set forth.

124. The class members are constitutionally guaranteed procedural due process under the 5th and 14th Amendments, which requires both notice and an opportunity to be heard.[38]  Before the class members could be deprived of their personal and real property or business, they had the right to be heard under the Fourteenth Amendment to the Constitution, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law."[39]

125. The class members have the constitutional right to adequate notice and "a meaningful opportunity" to be heard on the issue of whether the trial court should appoint a receiver under Code of Civil Procedure §564 and hand over the owner's property to the receiver. The Supreme Court in ***Mathews v. Eldridge*** (1976) 422 U.S. 319, 333 has stated that *"[T]his Court consistently has held that some form of hearing is required before an individual is finally deprived of a property interest.*" (citations omitted.). In ***Boddie v. Connecticut*** (1971) 401 U.S. 371, the Supreme Court explained that the "meaningful opportunity" to be heard must be at a "*meaningful time and in a meaningful manner.*" (*Id*, 378). The Cal. Rules of Court 3.1177 refers to a "hearing" but provides no details as to the type of hearing and essentially begs the question by stating that the parties may "suggest a receiver." Worse yet, CRC 3.1176, by its language… "*whenever a receiver is appointed without notice*"…suggests that the appointment is automatic and presumed justified unless "*the matter is made returnable upon an order to show cause.*"

126. In this class action, the class members have been afforded "law and motion" hearings with tentative rulings, summary procedures and with no statutory right to call witnesses, to cross-examination, to present all "relevant evidence" (Evid. Code. §362). For instance, and as noted above, Wynne Carvil of the Superior Court of Alameda granted Budget Finance Company's unopposed motion for the appointment of a receiver in a "tentative ruling" in a "law and motion" proceeding. Gregory Taylor's property was simply handed over to Mr. Singer without any type of evidentiary hearing and based solely on the self-serving pleadings of the lender without any pretense of affording due process protections. (**RJN**, ***Exhibit L***, Motion to Confirm Appointment of Receiver, RG 10499443). ("*The fundamental requisite of due process of law is the opportunity to be heard.*" ***Grannis v. Ordean*** 234 U.S. 385, 394; "*But when notice is a person's due, process which is a mere gesture is not due process." **Mullane v. Central***

---

[38] See 7 Witkin, Summary of Calif. Law (9th ed.) Constitutional Law, §502.
[39] Also Calif. Const. Art. 1, §7.

*Hanover Bank & Trust Co*. 339 U.S. 306 (1950)).

127. In the deed of trust and mortgage cases cited here, lenders have relied on the "*stipulation to appoint*" a receiver in those documents to summarily grant the appointment without requiring the lenders to even show "default." (***Barclays Bank of California v. Superior Court*** (1977) 69 Cal. App. 3d 593, 601-602). In that respect, the judicial defendant routinely rubber stamped the appointment based on the stipulation without affording the party a meaningful hearing on the issue of default and the related underlying issue of whether the lenders were engaging in predatory lending practices by demanding these "receivership provisions" in their contracts as a mandatory condition for granting a loan. (**RJN**, ***Exhibit R***, pg. 6/16).

128. Not only are the hearings provided in the "trust deed and mortgage" cases of this class action constitutionally flawed, but the hearings in the appointment cases related to the "enforcement of judgments" under CCP §564(b)(3) are also flawed. As noted above, several of the judicial defendants have granted Mr. Singer the right to "evict" tenants and apparently foregone the due process protections that inhere under the Unlawful Detainer Act. In one case involving a class member, judicial defendant Quidachay ignored the need to grant Mr. Singer the right to bring an "unlawful detainer action" under CCP §564(b)(7), but instead just liberally construed CCP §564 and concluded that the mere fact of appointment (given statutory language of a receiver's right to possession) was itself sufficient to "evict" a landlord without a judgment under the Unlawful Detainer Act. (Oddly, the receiver's right to possession was only construed as applying to the owner of the real property, not his tenants/roommates; **RJN**, ***Exhibit S***).

129. The procedures, standards, and criteria for "granting" the appointment of a receiver are also constitutionally inadequate, vague, or overbroad. As noted above, the case law provides that the appointments are "*drastic remedies*"[40] that should only be applied if there are no other "alternatives," but the consistent and routine practice of trial courts is to rubber stamp the appointments. The orders granting the "appointments" are prepared by the attorney of the petitioning party and neglect to provide any legal basis or

---

[40] ***City and County of San Francisco v. Daley*** (1993) 16 Cal. App. 4th 734, 745.

explanation for the ruling. This precludes or undermines any possible appeal.

130. In the same way, there are no set standards, procedures, or written and published criteria that a party or a trial judge can rely on or consider in determining whether to deny or grant a party's "opposition" to an appointment. The "oppositions" to an appointment are also routinely denied without written explanations or legal reasons. (**RJN**, ***Exhibit DD***,  Superior Court Ct. of Marin Court, CIV-025229). On the other hand, Kevin Singer is allowed by the court to file his opposition to a party's motion to amend the appointment even though he is unlicensed (UPL) and is required to be acting as a "neutral" party under Cal. Rules of Court 3.1179(a). (**RJN**, ***Exhibit EE***). Mr. Singer is also allowed to draft and submit his own "proposed orders" regarding the trial court's "Retaining Jurisdiction Regarding this Receivership" where he tries to slip in a provision excusing him from any potential liability. (**RJN**, ***Exhibit FF***, pg. 2, "*Finding that all of the Receiver's actions were right and proper and in the best interest of the Receivership Estate.*"). To his credit, judicial defendant John Appel inked out Mr. Singer's impromptu self-serving release (though he did not cite him for his UPL).

131. The state statute here is constitutionally infirm in that it leaves public policy considerations related to the procedures, criteria, and standards for granting or denying an appointment to the discretion of judges and, often times, the receiver himself. (Note Mr. Singer's attempt to limit his liability). Both trial judges and litigants must guess at what standards they need to meet in order to defeat or prevail in a motion to appoint a receiver. ("*If arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates  basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.*" ***Grayned v. City of Rockford***, 408 US 104, 108-109 (1972)).

132. The judicial and non-judicial defendants know or should know that an individual has a fundamental right to contract and be secure in one's home. (***Myers v. Nebraska*** 262 U.S. 390, 399; U.S. Const. Art. I, sec 10; Cal. Const. Art. I, sec 9).[41] While the state may have a rational

---

[41] **Myers**, *supra*, 399: "While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but

reason or purpose for depriving a party of it real property without a meaningful hearing or quickly expediting property disputes, there is no compelling reason to deprive an individual of his real property or physical possession of his home (impromptu evictions) without a compelling reason. ("*Strict scrutiny is the proper test of a legislative classification only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class.*" **Brandwein v. California Bd. of Osteopathic Ex'rs**, 708 F. 2d 1466, 1470 (9th Cir. 1983)

133. The actions of the judicial and non-judicial defendants were taken in bad faith, and with malice toward the class members.

134. The conduct of the judicial and non-judicial defendants represents a violation of 42 U.S.C. §1983 given that their actions were undertaken under color of state law.

135. As a direct and proximate result of the unconstitutional acts described above, the class members has been irreparably injured.

### FIFTH CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. Section 1983) By Plaintiff Against City and County of San Francisco (Sheriff's Department), All District Attorneys, AG Kamala Harris

### (Violation of Civil Rights under Color of Law Municipal and Individual Liability for Unconstitutional Policies and Practices)

136. The actions of the Defendants were taken in bad faith, and with malice toward the Plaintiff.

137. The Defendants know or should know that a municipality will be considered a person subject to liability within the meaning of section 1983 when "the municipality itself causes the constitutional violations at issue." (**Monell v. Dept. of Social Services of City of N.Y**. (1978) 436 U.S. 658, 694-695). The Defendants know or should know that the Supreme Court explained that a policy, custom, or practice for purposes of imposing municipal liability under section 1983 "*generally implies a course of action consciously chosen from among various*

---

also the right of the individual <u>*to contract*</u>, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, <u>*establish a home*</u> and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy *those privileges* long *recognized at common law as essential to the orderly pursuit of happiness by free men.*"

*alternatives.*" (***Oklahoma City v. Tuttle*** (1985) 471 U.S. 808, 823-824).

138. The Defendants know or should know that San Francisco Sheriff Ross Mirkarimi had "final authority" to enforce or not enforce facially void "writs of possession." In the same way, the District Attorney of each of the named municipalities had the "final authority" to establish policies and practices for enforcing the statutory prohibition against the UPL. (***Pembaur v. City of Cincinnati*** (1986) 475 U.S. 469, 482-483; "*The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.*").

## COUNT ONE -San Francisco Sheriff's Department.

139.  Here, Plaintiff has spoken with and emailed Ross Mirkarimi and Rick Nicco, the staff attorney for the Sheriff's Department, and pointed out that Mr. Singer's "writ of possession" was facially defective for not being filed by an attorney. Plaintiff informed both men that Mr. Singer was engaged in the UPL. He informed them that a "valid writ" was a precondition to their issuing a "Notice to Vacate."[42] Plaintiff's attorney also emailed Mr. Nicco and informed him that the writ was facially void in view of the UPL and the failure to comply with statutory procedures. Both Mr. Nicco and the Sheriff were provided them copies of Plaintiff's pleadings and proof that the "writ of possession" was not issued pursuant to a "judgment for possession under the Unlawful Detainer Act" as mandated by CCP section 715.050 but by a "petition to comply arbitration." Nevertheless, the Sheriff and Mr. Nicco scheduled three separate evictions, before finally forcibly and wrongfully evicting Plaintiff on November 6, 2014.

140. The San Francisco Sheriffs Department's policy or practice of presuming that a "writ of possession" issued by a court or a clerk of the court is presumptively valid or by definition is not "facially ambiguous or void" is not supported by case law. The Sheriffs Department should know that their improper policies and practices have been rejected by appellate courts. ***Bedi v. McMullen*** (1984) 160 Cal. App. 272, 275:

> The trial court took the view an eviction by the marshal under color of judicial process is not forcible, by definition. (3) It is certainly true a landlord is not liable for forcible entry and detainer if he evicts a tenant under a *valid* writ of execution issued under an *enforceable* judgment. (*Hamilton* v. *Waters* (1949) 93 Cal. App.2d 866, 867 [210 P.2d

---

[42] ***Bedi***, *supra*, at 275: "*A valid writ of execution is the ultimate indispensable element of the legal process by which a party entitled to possession of the property acquires possession. Allowing the landlord to forcibly evict a tenant on the strength of a judgment alone would remove the key conditions on the use of force: necessity and judicial authorization.*"

67].) (2b) But, the case at bench presents just the opposite set of facts. It is alleged the eviction was carried out under an *invalid* writ of execution issued under an *unenforceable* judgment.

Clearly, an eviction is no less forcible because it is carried out by the marshal instead of by the landlord personally. (See *Tri-State Refreshments, Inc.* v. *Nitke* (1964) 41 Misc.2d 386 [246 N.Y.S.2d 79, 83-84].)

Here, the Sheriffs Department policy and practice of enforcing facially void writs of possession based not on judgments for possession" obtained under the Unlawful Detainer Act but on petitions to compel arbitration should subject the City to **Monell** liability.

### COUNT TWO-District Attorney's Non-Enforcement Practice/Policy

141. The municipal Defendants know of should know that their policy or practice of failing to enforce the prohibition against the UPL in the context of receivership cases was the proximate cause of the class member's constitutional violations. The Defendants know or should know that the enforcement of the prohibition against the UPL is a matter within the "police powers" and that the class members lacked any authority to enforce the statute. Without the DA's oversight and supervision, the members of the class were easy targets and prey for Mr. Singer's unlawful scheme to practice law without a license, to game judicial inadvertence or ineptitude, and to deprive the members of the class of their property, possession of their homes, and their peace of mind without due process of law.

142. Here, Plaintiff has informed the Consumer Fraud Division of the San Francisco District Attorney's Office of Mr. Singer's UPL. He has also sent a complaint to AG Kamala Harris and the U.S. Attorney General apprising them of Mr. Singer's UPL. At a hearing on August 5, 2014, Mr. Singer acknowledged Plaintiff's complaints and interpreted the failure of the district attorney's office to enforce his UPL as a vindication of his UPL. He then mocked and ridiculed Plaintiff's allegations that he was engaged in the UPL, stating that he had the right to act in "pro per."

143. The Defendants know or should know that each District Attorney in each of the named municipalities is responsible for establishing official policy regarding the UPL as evinced by the Prosecutor's Manual for the Unlawful Practice of Law issued by former LA District Attorney Steve Cooley. While it is laudable that District Attorney Cooley had implemented a policy and manual for *preventing* the UPL, it's shameful and a constitutional tort to have a policy for the remaining District Attorneys, as well as the current LA district attorney, not to enforce the ban against the UPL. As noted above, AG Harris may be responsible for implementing a state-

wide policy, but the District Attorneys for each county are the "final authority" for implementing a policy and assuring that it is enforced.[43] The District Attorneys have woefully failed to enforce the prohibition against the UPL, causing the class members' irreparable harm.

144. This conduct on the part of the above-named Defendants, the San Francisco Sheriff, and the various District Attorneys also represents a violation of 42 U.S.C. §1983, given that their actions were undertaken under color of state law.

145. As a direct and proximate result of the unconstitutional actions described above, Plaintiff has been irreparably injured.

### SIXTH CAUSE OF ACTION
### FOR DECLARATORY AND INJUNCTIVE RELIEF

146. Plaintiff realleges and incorporates herein by reference each and every allegation and paragraph previously set forth.

147. As stated herein, the members of the class, as citizens and individuals, are protected by the laws of the State of California, as well as those of the United States Constitution, including the First, Fifth, and Fourteenth Amendments thereto.

148. As stated herein, the judicial defendants and non-judicial defendants have wrongfully, unlawfully, and with deliberate indifference to the rights of the members of the class, acted, practiced an/or adopted policies, practices, procedures an/or customs which are in violation of the rights of the Class, including subjecting the members to actions, motions, and suits by individuals not authorized to practice law in the state of California.

149. The Defendants, particularly the judicial defendants,  have failed to acknowledge their improper, unlawful and unconstitutional actions, conduct and policies at the time of the incidents at issue in the present action, and Plaintiff is informed and believes, and on that basis alleges, that they have not changed or modified the procedures or policies that allow for the unauthorized practice of law and the enforcement of invalid of writs of possession (which is the basis for an eviction by the Sheriffs Department)..

---

[43] ***Oviatt v. Pearce***, 954 F.2d 1470, 1477 (9th Cir. 1992) (holding that "[t]he decision not to take any action to alleviate the problem of detecting missed arraignments constitutes a policy for purposes of § 1983 municipal liability").

150. The Defendants' wrongful and unlawful conduct, actions and/or policies, unless and until enjoined and restrained by order of this court, will cause, and continue to cause, great an irreparable injury to the Plaintiffs, and other similarly situated members of the class, in that the Defendants will continue to act in accordance with said unlawful polices, and with deliberate indifference to their duties and obligations under state and federal law, including those under the First, Fifth, and Fourteenth Amendments as alleged herein above.

151. Plaintiff has no adequate remedy at law to prevent or prohibit Defendants from continuing, and/or repeating, their unlawful and unconstitutional conduct and policies related to the UPL other than through declaratory relief, and therefore Plaintiff on behalf of the Class seek an order enjoining and prohibiting Defendants, particularly judicial defendants, from, but not limited to, conducting and/or allowing court-appointed receivers such as Kevin Singer or any other non-lawyer to practice law and file lawsuits against Plaintiff.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court order the following relief and remedies:

1). Issue a judicial declaration that Defendant Singer's unauthorized practice of law  is a violation of the Class Member's due process rights under the 14th Amendment, and 42 U.S.C. §1983;

2). Issue a judicial declaration that a court receiver's powers under the statute (CCP §568, CCP §708.610) do not entail the right to practice law without a license;

3). Issue a judicial declaration that a court-appointed receiver for the "right to possession" under CCP §568 does not deprive the other party of his due process protections including the right to a jury trial under the Seventh Amendment and California Const. Art. I, sec. 16.

4). Issue a judicial declaration that a judicial officer acts in the complete absence of all his jurisdiction in allowing his courtroom to be used as a forum for the commission of the misdemeanor of practicing law without a license;

5). Issue a judicial declaration that Mr. Rachlin, Mr. McKay and the other defendants colluded and conspired with Mr. Singer to commit the crime of practicing law without a license and for the purpose of furthering their eviction scheme;

6). Issue a judicial declaration that all proposed orders, stipulations, or writs of possession submitted by Mr. Singer and signed by the judicial defendants' while Mr. Singer was practicing law without a license are a "nullity" and invalid.

7). Issue a preliminary injunction enjoining Mr. Singer from practicing law while acting in his "representative capacity" as a court-appointed receiver.

8). Award the Class punitive damages for the conspiracy, costs and expenses, including reasonable attorney's fees under 42 U.S.C. §1988;

9). Award such further and additional relief as is just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Div. P. 38(b), and Central District Local Rule 38-1. Plaintiff hereby demand a jury trial on all issues triable by a jury.


Respectfully submitted,


/s/ Patricia Barry
_____
Patricia Barry, Esq.
Attorney for Plaintiffs


/s/ Archibald Cunningham
_____
Arch Cunningham, Esq.
Attorney for Plaintiffs